IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| MARK HAMMERVOLD, | ) |
| Plaintiff, | ) |
| vs. | ) No. 3:22-CV-01053 |
| LARRY BECKWITH, | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM**

Defendant Larry Beckwith ("Mr. Beckwith"), by and through counsel, moves this Court to dismiss Plaintiff Mark Hammervold's ("Mr. Hammervold") Complaint in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

**INTRODUCTION**

Mr. Hammervold is an attorney. This lawsuit arises out of Mr. Hammervold's prior "associated" representation of Mr. Beckwith in a case that is still pending in state court in Williamson County, Tennessee ("Underlying Case"). In the Underlying Case, Mr. Beckwith hired Brian Manookian ("Mr. Manookian") to represent him under a contingency fee agreement ("Manookian Engagement Agreement"). Mr. Hammervold "associated" with Mr. Manookian and represented Mr. Beckwith through that association. The Manookian Engagement Agreement explained that Mr. Hammervold *may* assist Mr. Manookian with the representation, and if so, Mr. Hammervold would be paid by Mr. Manookian "sharing" his fee with Mr. Hammervold. The Manookian Engagement Agreement expressly stated "[a]ll compensation to Mr. Hammervold is out of my already agreed upon fee and ***does not cost you anything additional***." (Complaint, Exhibit B, D.E. 1-2.) (emphasis added).

{00570515.1}

The Complaint acknowledges that there is no written agreement between Mr. Hammervold and Mr. Beckwith. Mr. Hammervold also does not assert in his Complaint that he ever discussed the amount of fees or the terms under which Mr. Beckwith would pay him related to his alleged representation. Despite this clear violation of the Tennessee Rules of Professional Conduct, which bars Mr. Hammervold from any recovery, and the passage of nearly three years after withdrawing from the representation, Mr. Hammervold seeks an obscene about of money from Mr. Beckwith with absolutely no basis to do so.

Mr. Hammervold's Complaint fails to state a claim for both quantum meruit and unjust enrichment for several reasons. As an initial matter, Mr. Hammervold was not a party to any written contingency fee agreement with Mr. Beckwith. In an attempt to escape this bad fact, Mr. Hammervold improperly relies on the Manookian Engagement Agreement, despite the clear language showing that Mr. Hammervold was not a party to that engagement agreement.[1] Additionally, Mr. Hammervold fails to allege that he ever discussed fees and expenses related to his alleged representation of Mr. Beckwith, let alone had a separate written engagement agreement with Mr. Beckwith. For these reasons, discussed more fully below, Mr. Hammervold is not legally entitled to recover fees under quantum meruit or unjust enrichment and his Complaint should be dismissed for failure to state a claim under Rule 12(b)(6).

---

[1] This is not the first time that Mr. Manookian and Mr. Hammervold have been accused of misleading and fraudulent practices related to engaging clients. *See, e.g.*, *The Diamond Consortium, Inc. v. Manookian and Hammervold*, 2016 WL 6193509, No. 4:16-CV-94 (E.D. Tex. Sept. 14, 2016).

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

In January of 2016, Mr. Beckwith entered into the Manookian Engagement Agreement. (*See* Complaint, Exhibit B, D.E. 1-2.) The Manookian Engagement Agreement was with Cummings and Manookian; Mr. Manookian's law firm, which Mr. Hammervold is not a part of. (*Id.*). The Manookian Engagement Agreement expressly provided:

> Additionally, I occasionally split my portion of contingency fees with Mark Hammervold when I have him assist in a case. I may have him assist in this case, and if so, you agree to my sharing of my fee with him. All compensation to Mr. Hammervold is out of my already agreed upon fee and does not cost you anything additional.
>
> You have the right to change attorneys to another attorney or firm at any time by sending us a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, our experience, ability, reputation, the responsibility involved and the results obtained.
>
> We may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you. A "withdrawal" by this firm does not relieve you of the responsibility to pay advanced costs.

(*Id.* at pg. 4.) The Complaint admits that "the split of the contingent attorney fee ***would be determined later*** among the attorneys and approved by the client." (D.E. 1, Page ID #3, ¶ 11.) (emphasis added).

Mr. Manookian and Mr. Hammervold filed the complaint in the Underlying Case on January 22, 2016. (*Id.* ¶ 34.) Initially, the district court dismissed the complaint finding that Mr. Manookian and Mr. Hammervold had filed it one day late. (*Id.*) In order to avoid a malpractice claim, Mr. Manookian, with the assistance of Mr. Hammervold, pursued an appeal of the district

court's order. During that appeal, on or about April 18, 2017, Mr. Manookian told Mr. Beckwith: "Let's talk next week about my role going forward. I intend to pursue the appeal in this matter, ***but I will withdraw at its conclusion***, as is my prerogative under our engagement letter. You need to arrange for Bill or Harold or someone else to take my place." (*Id.* at pg. 15, ¶ 72 (emphasis added).) Therefore, forgoing any payment from Mr. Beckwith.

Mr. Manookian also emailed Mr. Hammervold stating "[l]et's discuss whether continuing any relationship with these individuals makes sense under the circumstances." (*Id.* ¶ 71.) On or about September 21, 2018, Mr. Manookian was suspended from the practice of law. (*See* Tennessee Board of Professional Responsibility, Attorney Details, https://www.tbpr.org/attorneys/026455.) [2] Again, this would render Mr. Beckwith's Engagement Agreement with Mr. Manookian void and no payment would be required.

While Mr. Manookian failed to undertake further work on the appeal, Mr. Hammervold continued with the appeal, presumably pursuant to his separate agreement with Mr. Manookian. (D.E. 1, Page ID#12, ¶¶ 48, 61.) Mr. Hammervold does not allege in his Complaint that he entered into any engagement letter directly with Mr. Beckwith because he did not. Mr. Hammervold does not allege that he discussed the terms of his representation with Mr. Beckwith because he did not. Mr. Hammervold does not allege that he discussed what rate he would charge, what percentage of any judgment or settlement he would receive, or what amounts would be due and owing in the

---

[2] The disciplinary history of an attorney is a matter of public record and/or is a matter that the Court can take judicial notice of. Therefore, the inclusion of this fact does not convert this Motion to Dismiss into a Motion for Summary Judgment. *See Hancock v. Miller*, 852 F. App'x 914, 919–20 (6th Cir. 2021).

4

NSH 2606391.2
NSH 2608411.1

Case 3:22-cv-01053   Document 22   Filed 02/24/23   Page 4 of 14 PageID #: 120

event that he stopped representing Mr. Beckwith because he failed to discuss any of the items with Mr. Beckwith.

Ultimately, the Tennessee Court of Appeals held that while the complaint in the Underlying Case was not filed beyond the statute of limitations period due to the language in the tolling agreement, all but one of the claims were correctly dismissed under the applicable statute of limitations. *See Beckwith v. LBMC*, *P.C.*, No. M2017-00972-COA-R3-CV (Tenn. Ct. App. Dec. 6, 2017). Right around that time, on April 18, 2019, Mr. Hammervold alleges that he and Mr. Manookian had a call and "Manookian agreed to assign the entire portion of the contingency fee" to Mr. Hammervold. (D.E. 1, PageID #19, ¶ 88.). The Complaint does not plead that this alleged agreement was *ever communicated* to Mr. Beckwith. Despite this lack of consent, later that same day, Mr. Hammervold emailed Mr. Beckwith's counsel contending that he was owed money under the Manookian Engagement Agreement. (*Id.* ¶ 89.) By emails between counsel, Mr. Hammervold was expressly notified on May 7, 2019, that Mr. Beckwith would not like to proceed with Mr. Hammervold's representation in the Underlying Case. (*Id.* ¶ 97.)

## LEGAL STANDARD

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept [the plaintiff's] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "However, 'a legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d

603, 609 (6th Cir. 2009)). To survive a Rule 12(b)(6) motion to dismiss, the complaint must raise more than a "possibility that a defendant has acted unlawfully"; there must be sufficient factual allegations to render the claim facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Wesley*, 779 F.3d at 429. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

At the motion-to-dismiss stage, a court may consider "other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Hancock v. Miller*, 852 F. App'x 914, 919-20 (6th Cir. 2021) (quoting *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005)).

## ARGUMENT

### I. Mr. Hammervold had no Engagement Letter with Mr. Beckwith

#### a. Mr. Hammervold was Not a Party to the Manookian Engagement Agreement

Mr. Hammervold's Complaint and the claims therein are completely reliant on Mr. Hammervold's contention that he was a party to the Manookian Engagement Agreement. Mr. Hammervold contends:

- "From January 18, 2016 until at least May 6, 2019, Beckwith had an Engagement Agreement with Manookian and Hammervold, by which he was required to pay a contingency fee that would be split between Manookian and Hammervold, based on the division of labor in the case." (D.E. 1, Page ID #24, ¶ 107.)

- "Mark Hammervold was at least an intended third-party beneficiary of that contingency fee agreement." (*Id.* ¶ 108.)

- "As a result of Beckwith's termination of the Engagement Agreement, Hammervold became limited in his recover of fees to quantum meruit." (*Id.* ¶ 110.)

6

NSH 2606391.2
NSH 2608411.1

These allegations, in addition to other allegations throughout the Complaint, are legal conclusions couched as factual allegations; therefore, the Court is not required to accept these as true. *See, e.g.*, *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Furthermore, under Tennessee law, "the determination of whether a contract has been formed is a question of law. *German v. Ford*, S.W.3d 692, 701 (Tenn. Ct. App. 2009) (citing *Murray v. Tenn. Farmers Assurance Co.*, No. M2008–00115–COA–R3–CV, 2008 WL 3452410, at *2 (Tenn. Ct. App. Aug.12, 2008)). "The interpretation of a contract and the ascertainment of the parties' intentions relating to the contract are also questions of law." *Id.* (citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn.1999); *Doe v. HCA Health Services of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)).

Rule 1.5 of the Tennessee Rules of Professional Responsibility governs the requirements for fee agreements. In pertinent part, Rule 1.5 requires:

> (c) . . . A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, *including the percentage or percentages that shall accrue to the lawyer* in the event of settlement, trial, or appeal . . .
> 
> . . . .
> 
> (e) A division of a fee between lawyers who are not in the same firm may be made only if:
> (1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
> (2) *the client agrees to the arrangement, and the agreement is confirmed in writing*; and
> (3) the total fee is reasonable.

Here, Mr. Hammervold's allegation that he was a party to the Manookian Engagement Agreement is contrary to the plain language of the document. The Manookian Engagement Agreement clearly shows that it was between the firm Cummings and Manookian, of which Mr. Hammervold is not a member, and Mr. Beckwith. (D.E. 1-2.) Mr. Hammervold did not sign the

NSH 2606391.2
NSH 2608411.1

Manookian Engagement Agreement. (*Id.*) Moreover, the express language of the document states that Mr. Manookian "*may* have Mark Hammervold assist in this case" and if so Mr. Manookian would share his fee with him. (*Id.* (emphasis added)). Mr. Manookian clearly promised that under no circumstances would Mr. Beckwith owe Mr. Hammervold ***anything***. (*Id.*) Instead, the only way that Mr. Hammervold would receive any money for the representation would be from Mr. Manookian out of his "already agreed to fee." (*Id.*). Therefore, accepting the facts pled in the Complaint as true, it is undisputed that Mr. Hammervold was not a party to the Manookian Engagement Agreement.

Further, even assuming that Mr. Hammervold could seek compensation under an agreement he was not a party to, the Manookian Engagement Agreement would not satisfy the requirements of the Rules of Professional Responsibility as it relates to Mr. Hammervold. Contrary to the requirements under Rule 1.5, nowhere in the Manookian Engagement Agreement does it state the percentage of the fee that would accrue to Mr. Manookian, nor does it state the extent to which Mr. Hammervold would be consulted or if he would be consulted at all. In the Complaint, Mr. Hammervold even alleges that "the split of the contingent attorney fee ***would be determined later*** among the attorneys and approved by the client." (D.E. 1, Page ID #3, ¶ 11 (emphasis added).) In fact, it was not until years later, on or about April 18, 2019, that Mr. Hammervold alleges he and Mr. Manookian had a call and "Manookian agreed to assign the entire portion of the contingency fee" to Mr. Hammervold. (D.E. 1, PageID #19, ¶ 88.) A unilateral decision without the client's approval certainly does not satisfy the requirements of Rule 1.5. No proposed agreement was ever presented to or approved by Mr. Beckwith in relation to Mr. Hammervold, which is made clear by the allegations in the Complaint.

8

NSH 2606391.2
NSH 2608411.1

Case 3:22-cv-01053   Document 22   Filed 02/24/23   Page 8 of 14 PageID #: 124

In addition, and even if Mr. Hammervold could theoretically recover money from Mr. Beckwith under the Manookian Engagement Agreement, it was terminated by Mr. Manookian on or about April 18, 2017. (*Id.* at pg. 15, ¶ 72, citing the email where Mr. Manookian told Mr. Beckwith: "Let's talk next week about my role going forward. I intend to pursue the appeal in this matter, ***but I will withdraw at its conclusion***, as is my prerogative under our engagement letter. You need to arrange for Bill or Harold or someone else to take my place.") And the Manookian Engagement Agreement was undisputedly terminated by September 21, 2018, when Mr. Manookian was suspended from the practice of law. (*See* Tennessee Board of Professional Responsibility, Attorney Details, https://www.tbpr.org/attorneys/026455.)

For these reasons, and as a matter of law, Mr. Hammervold cannot seek recovery for any of his time spent allegedly representing Mr. Beckwith under the Manookian Engagement Agreement.

### b. Mr. Hammervold had no Other Engagement Agreement with Mr. Beckwith

Aside from the Manookian Engagement Agreement, Mr. Hammervold does not allege that he had any other engagement agreement with Mr. Beckwith. In pertinent part, Rule 1.5 requires:

> (b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible ***shall*** be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.
>
> (c) . . . A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, *including the percentage or percentages that shall accrue to the lawyer* in the event of settlement, trial, or appeal . . .

9

NSH 2606391.2
NSH 2608411.1

Case 3:22-cv-01053   Document 22   Filed 02/24/23   Page 9 of 14 PageID #: 125

(emphasis added). Tennessee Courts have likewise held that attorneys "are required, however, to see to it that their clients understand how the fee will be calculated and billed whether the contract is in writing or not." *Alexander v. Inman*, 903 S.W.2d 686, 694 (Tenn. Ct. App. 1995). Furthermore, courts will not enforce contracts for attorneys' fees that are contrary to public policy. *Id.* An attorney seeking to enforce a contract for attorney's fees *must* show that: "(1) the client fully understood the contract's meaning and effect; (2) the attorney and client shared the same understanding of the contract; and (3) the terms of the contract are just and reasonable." *Berkley v. Williams*, 2020 WL 1904943, at *4 (W.D. Tenn. Apr. 17, 2020) (citing *Alexander*, 903 S.W.2d at 694).

Here, the Complaint sets forth no allegations that the scope of the representation and the basis or rate of the fee and expenses that Mr. Beckwith would be responsible for were communicated to the client at all, let alone in writing, which would be in clear violation of Rule 1.5(b) of the Rules of Professional Responsibility and established Tennessee caselaw. Further, the Complaint does not allege that Mr. Hammervold ever sent a bill outlining his hourly rate to Mr. Beckwith. In fact, it is clear from the Complaint that it was not until April 18, 2019, that Mr. Hammervold and Mr. Manookian unilaterally made the decision that Mr. Manookian would assign the entire portion of the contingency fee to Mr. Hammervold. (D.E. 1, PageID #19, ¶ 88.) This is a clear violation of Rule 1.5's requirements regarding fee agreements. *See, e.g.*, *Hanzelik v. Bd. of Prof. Resp. of Sup. Ct.*, 380 S.W.3d 669, 680 (Tenn. 2012) (affirming the decision finding an attorney responsible for violating Rule 1.5 because of their failure to provide an engagement letter, a fee schedule, and only demanding a retainer fee payment from the client).

To the extent that Mr. Hammervold attempts to rely on a contingency fee arrangement between Mr. Hammervold and Mr. Beckwith, separate from the Manookian Engagement Agreement, there are no allegations that any such contingency arrangement was agreed to, was ever discussed, or was in writing, which would be a violation of Rule 1.5(c). *See* Tenn. R.P.C. 1.5; *see also Harris v. White*, No. M2011-00992-COA-R3CV, 2012 WL 1795086, at *5 (Tenn. Ct. App. May 16, 2012).

## II. Mr. Hammervold is Not Legally Entitled to Fees and Therefore, His Claims Fail as a Matter of Law

Mr. Hammervold fails to allege the existence of an engagement letter or the occurrence of any conversation regarding his fees, aside from the Manookian Engagement Agreement; therefore, he is not entitled to fees and his claims fail as a matter of law.

Actions "brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same." *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966). These theories are equitable in nature. Recovery under these theories is "based on a legally implied promise to pay a reasonable amount for goods or services received," and is therefore limited to the actual value of the goods or services received." *Mitch Grissim & Assocs. v. Blue Cross & Blue Shield of Tenn.*, 114 S.W.3d 531, 537 (Tenn. Ct. App. 2002) (citing *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn.Ct.App.1995) (internal citations omitted)). In order to recover under a theory of quantum meruit, the following must be proven:

(1) there must be no existing, enforceable contract between the parties covering the same subject matter;

(2) the party seeking recovery must prove that it provided valuable goods and services;

(3) the party to be charged must have received the goods and services;

11

NSH 2606391.2
NSH 2608411.1

(4) the circumstances must indicate that the parties involved in the transaction should have reasonably understood that the person providing the goods or services expected to be compensated;

(5) the circumstances must also demonstrate that it would be unjust for the party benefitting from the goods or services to retain them without paying for them.

*Mitch Grissim & Assocs.*, 114 S.W.3d at 537 (citing Castelli v. Lien, 910 S.W.2d 420, 427 (Tenn.Ct.App.1995)).

"The relationship of attorney and client is an extremely delicate and fiduciary one, so far as the duty of the attorney toward the client is concerned. The attorney is an officer of the courts in which he is a practitioner, and courts jealously hold him to the utmost good faith in the discharge of his duty." *Madison Tire Co., Inc. v. Weaver*, 1986 WL 12493, at *2 (Tenn. Ct. App. Nov. 7, 1986). As a result, "misconduct in violation of a statute or acts against public policy, or in breach of an attorney's fiduciary duty to his client, may support a complete forfeiture of fees." *Id.*

Here, Mr. Hammervold seeks to recover fees under the theories of quantum meruit and unjust enrichment. His rationale is that his contingency fee with Mr. Beckwith ended on May 6, 2019, and after the termination of this alleged agreement, he was entitled to the recovery of his fees under quantum meruit and unjust enrichment.

As shown above, Mr. Hammervold was not a party to the Manookian Engagement Agreement nor does the Complaint allege facts that there was any other agreement between the parties regarding fees. Despite the lack of agreement between the parties, Mr. Hammervold's Complaint seeks fees in the excess of $250,000. (D.E. 1, PageID #27.)

In the Complaint, Mr. Hammervold relies on *Miltier v. Bank of Am., N.A.*, No. E2012–00393–COA–R3–CV, 2013 WL 3282939 (Tenn. Ct. App. June 26, 2013) and *Madison Tire Co.,*

*Inc. v. Weaver*, 1986 WL 12493 (Tenn. Ct. App. Nov. 7, 1986) to support his contention that he can pursue his claims against Mr. Beckwith. Both of these cases are clearly distinguishable from the factual allegations alleged in the Complaint. In those cases, the attorney seeking fees was a clear party to the initial contingency fee agreements, but the defendants in those cases terminated the attorney-client relationship prior to recovery so the courts permitted the attorneys to proceed under the theory of quantum meruit. The defendants in those cases were properly informed of their fee arrangements. Conversely, here, Mr. Hammervold had no such fee agreement with Mr. Beckwith, contingency or otherwise. Permitting Mr. Hammervold to recover his exorbitant request for fees absent any fee agreement between Mr. Hammervold and Mr. Beckwith is contrary to the Rules of Professional Responsibility and Tennessee caselaw. This is not a case where there was an "innocent snafus, such as an oversight in drafting that might render their fee contracts unenforceable." *White v. McBride*, 937 S.W.2d 796, 803 (Tenn. 1996). Rather, there is a complete lack of a fee agreement or understanding, which goes to the heart of the fiduciary relationship between an attorney and their client. The *White* court held that when the underlying issue goes to the heart of the fiduciary relationship and is a clear violation of the Rules of Professional Conduct, the attorney should not be permitted to rely on the theory of quantum meruit to collect fees. *Id.*

## CONCLUSION

Because Mr. Hammervold was not a party to the Manookian Engagement Agreement and because he has not plead that he had a separate fee arrangement with Mr. Beckwith, as required by the Rules of Professional Responsibility, Mr. Hammervold is not legally entitled to recover fees in this case. The facts alleged in Mr. Hammervold's Complaint do not give rise to a facially plausible cause of action. Therefore, Mr. Beckwith respectfully asks this Court to dismiss Mr.

13

NSH 2606391.2
NSH 2608411.1

Hammervold's Complaint. In addition, due to the frivolous nature of the Complaint, Mr. Beckwith seeks recovery of his reasonable attorney fees expended in filing this Motion to Dismiss.

Respectfully submitted,

*/s/ Bethany M. Vanhooser*
Bethany Vanhooser, BPR # 038594
SPENCER FANE LLP
511 Union Street, Suite 1000
Nashville, TN 37219
bvanhooser@spencerfane.com

Jamie Cotter, *admitted pro hac vice*
SPENCER FANE LLP
1700 Lincoln Street, Suite 2000
Denver, CO 80203
jcotter@spencerfane.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a correct and true copy of the foregoing document was served on the following individuals via the Court's ECF system and electronic mail on February 24, 2023:

Mark Hammervold
155 S. Lawndale Ave
Elmhurt, IL 60126
mark@hammervoldlaw.com

*/s/ Bethany M. Vanhooser*