IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| MARK HAMMERVOLD; | § |
| Plaintiff | § |
| v. | § No. 3:22-CV-01053 |
| LARRY BECKWITH; | § |
| Defendant | § |

**PLAINTIFF MARK HAMMERVOLD'S RESPONSE IN OPPOSITION TO DEFENDANT LARRY BECKWITH'S MOTION TO DISMISS**

The Plaintiff, Mark Hammervold ("Hammervold"), hereby submits this Response in Opposition to Defendant Larry Beckwith's ("Beckwith") Motion to Dismiss. The Court should deny Beckwith's Motion to Dismiss in its entirety because Hammervold has stated legally cognizable claims for both quantum meruit and unjust enrichment.

## INTRODUCTION

Plaintiff Mark Hammervold represented Defendant Larry Beckwith as his attorney in a civil lawsuit involving Beckwith's highly valuable accounting malpractice claim against Lattimore Black, Morgan & Cain, P.C. Compl. ¶ 1 (Dkt. 1).[1] Through this representation, Hammervold created significant value for Beckwith, including by drafting his complaint, ensuring it got timely-filed, dealing with Lattimore's various dispositive motions, and obtaining reversal of a legally-incorrect order granting summary judgment through a successful appeal. *Id.* ¶¶ 1, 51, 100-103.

At the outset of the representation, Beckwith entered into a contingency fee agreement with Cummings Manookian, PLC. *Id.* ¶¶ 28-31; Ex. B (Dkt. 1-2). That agreement made clear that

---

[1] Portions of the Complaint were redacted to protect privileged information. An unredacted copy of the Complaint was filed with the Court's permission at Dkt. 5.

1

Manookian and Hammervold would be sharing the responsibility of representing Beckwith and splitting the contingency fee. *Id.* While the agreement did not specify the exact split of the fee between Manookian and Hammervold, this was because the split was to be determined based on the amount of time and responsibility undertaken by Manookian and Hammervold in connection with the representation. *Id.* ¶ 31, Ex. B.

Since the agreement made clear that Hammervold would be entitled to a share of the contingent fee based on the amount of work he did on Beckwith's behalf, Hammervold expected to be paid for that work. *Id.* ¶¶ 28-31, 107-108, Ex. B. Neither party believed – nor could have reasonably believed – that Hammervold was gratuitously representing Beckwith, without any expectation of being compensated. *Id.*[2]

After Hammervold spent hundreds of hours representing Beckwith over more than three years, and materially advanced Beckwith's meritorious and highly-valuable accounting malpractice claim, Beckwith terminated the contingency fee agreement and the representation. *Id.* ¶ 103.

## **MOTION STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 962 F.3d 882, 887 (6th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In evaluating a motion to

---

[2] Beckwith claims that Hammervold represented him in the appeal only to avoid a malpractice claim. MTD at 3-4. This is contrary to Hammervold's allegations in the Complaint because Hammervold was involved in the case from its outset (before any alleged malpractice) and did not commit malpractice. *See* Compl. ¶¶ 33-44, 57, 96.

2

dismiss, "[c]ourts must 'construe the complaint in the light most favorable to the plaintiff[] [and] accept all well-pleaded factual allegations as true.'" *Id.* (quoting *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017)). "'Unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' the court must deny a motion to dismiss for failure to state a claim." *In re Rospatch Sec. Litig,*, 760 F. Supp. 1239, 1246 (W.D. Mich. 1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

"The defendant has the burden to show that the plaintiff failed to state a claim for relief." *Coley v. Lucas Cnty.*, 799 F.3d 530, 537 (6th Cir. 2015).

## ARGUMENT

This Court should deny Beckwith's Motion to Dismiss because Hammervold has pled facts demonstrating all of the elements required for quantum meruit and unjust enrichment, and Beckwith's forfeiture affirmative defense is premature and meritless.

### I. Hammervold has Stated a Claim for Quantum Meruit (Count I).

It is "well settled in Tennessee" that an attorney is entitled to compensation based on quantum meruit when they were working on a contingency fee basis, but the client or attorney terminates the representation before the end of the case. *Adams v. Mellen,* 618 S.W.2d 485, 488 (Tenn. Ct. App. 1981); *see also e.g., Miltier v. Bank of Am.*, 2013 Tenn. App. LEXIS 419, *14 (Tenn. Ct. App. May 14, 2013).

That is precisely the situation here. All parties expected Beckwith to pay Manookian and Hammervold pursuant to a contingency fee agreement until Beckwith terminated their representation and that agreement in 2019.[3] Compl. ¶¶ 29-32, 103. While Beckwith had the right

---

[3] Beckwith claims that the contingency fee became void on or about September 21, 2018 when Brian Manookian was suspended from the practice of law. MTD at 4. But, Beckwith's contingency fee agreement was with the firm Cummings Manookian, not Brian Manookian individually. *See* Compl. Ex. B. Regardless, Hammervold continued to labor on Beckwith's behalf until Beckwith terminated the representation on *See Compl.* ¶ 87, 92, 95, 97-98. At most,

to terminate Hammervold's representation and the contingency fee agreement, Hammervold now has the right to seek reasonable compensation for the hundreds of hours he spent working on Beckwith's behalf based on quantum meruit. *See Adams,* 618 S.W.2d at 488.

Hammervold has pled each element required for his quntum meruit claim. Those are: (1) no existing or enforceable contract; (2) plaintiff provided valuable services; (3) defendant received or benefitted from the services; (4) the parties understood that the plaintiff expected to be compensated for the services; and (5) it would be unjust for the defendant to benefit from the plaintiff's provision of services without paying for them. *See* Def. Mot. at 11-12 ("MTD") (Dkt. 22) (citing *Mitch Grissim & Assoc.*, 114 S.W.3d at 537).Beckwith does not challenge Hammervold's pleading of *any* of these specific elements. *See generally* MTD.

Instead, in Section I of his MTD, Beckwith argues that Hammervold has not pled a quantum meruit claim because he was "not a party to the engagement agreement." *Id.* at 6-9. But this claim has no merit – and no impact on the validity of Hammervold's quantum meruit claim – because a plaintiff must affirmatively prove the absence of a binding or enforceable contract to state a claim for quantum meruit. MTD at 11.

Beckwith also claims that Hammervold did not ever have an enforceable right to recover under the contingency fee agreement (before Beckwith terminated it), and therefore, he cannot recover now based on quantum meruit. MTD at 12-13 (attempting to distinguish *Miltier,* 2013 Tenn. App. LEXIS 419, *14 and *Madison Tire Co., Inc. v. Weaver*, 1986 Tenn. App. LEXIS 3427 (Tenn. Ct. App. Nov. 7, 1986). But Beckwith's argument fails on multiple levels.

First, Hammervold had the legal right and reasonable expectation of collecting a fee based on the contingency agreement – even as a non-party – because he was an intended third-party

---

Beckwith's argument about when the contingency agreement terminated is a question of fact and goes only to the issue of the appropriate amount of the fee that should be awarded.

4

beneficiary. *See* Compl. ¶¶ 29-31, 107-108, Ex. B; *First Tenn. Bank Nat'l Ass'n v. Thoroughbred Motor Cars*, 932 S.W.2d 928, 930 (Tenn. Ct. App. 1996) (an intended third-party beneficiary has standing to recover on a contract); *Am. Computer Tech., Inc. v. Hardwick*, 274 Ga. App. 62 (2005) ("Here, the original contract plainly shows on its face that Hardwick was intended to receive a portion of the contingency fee. He is therefore entitled to bring an action on the contract as a third-party beneficiary.").

Second, a quantum meruit claim does not require that a legally binding and enforceable contract *ever* existed. *See e.g., Cummings v. Patterson,* 59 Tenn. App. 536, 541 (Tenn. Ct. App. 1968) (affirming trial court's finding that an attorney was entitled to quantum meruit compensation when the initial contingency fee contract was found to be void and unenforceable); *Dillard Constr., Inc. v. Havron Contr. Corp.,* 2010 Tenn. App. LEXIS 732, *20-21 (Tenn. Ct. App. Nov. 23, 2010) (affirming judgment in favor of plaintiff who performed work on defendant's behalf where parties never formed binding contract); *Seiden Law Grp., P.C. v. Segal,* 2021 IL App (1st) 200877, *P24 (Ill. App. 1st 2021) (plaintiff attorney was entitled to recover based on quantum meruit even when contingency fee agreement was initially invalid because it failed to set the fee percentage).[4]

## II. Hammervold has Stated a Claim for Unjust Enrichment (Count II).

Hammervold also has successfully pled his claim for unjust enrichment because the only difference between Counts I and II is the measure of damages. *See e.g., Furth v. Zanic,* 2009 U.S. Dist. LEXIS 147985, *48 (N.D. Ohio Feb. 2, 2009) ("Quantum meruit contains the same elements as unjust enrichment—the only difference is how damages are calculated."); *see also* MTD at 11 (acknowledging that the elements required for liability are the same for quantum meruit and unjust enrichment).

---

[4] Beckwith cites no authority otherwise. *See* MTD at 12-13.

### III. Beckwith' Forfeiture Affirmative Defense is Premature and Unfounded.

Beckwith argues that Hammervold's right to a fee based on quantum meruit should be forfeited because of misconduct by Hammervold. MTD at 8-9, 13. But Beckwith's forfeiture defense is not appropriate for resolution through a motion to dismiss but, in any event, clearly lacks merit.

#### a. Beckwith's Forfeiture Affirmative Defense is Premature.

Beckwith's forfeiture argument is a highly fact dependent affirmative defense that is not appropriate for resolution at the motion to dismiss stage. *See Alerding Castor Hewitt LLP v. Fletcher,* 2020 U.S. Dist. LEXIS 29922, \*7 (S.D. Ind. Feb. 21, 2020) ("An argument for fee forfeiture can be an affirmative defense to a claim for fees."); *Lockhart v. Holiday Inn Express Southwind*, 531 Fed. Appx. 544, 547 (6th Cir. 2013) ("We. . .are reluctant to dismiss complaints based on affirmative defenses at the pleading stage and before any discovery has been conducted."); *Nason Homes, LLC v. Billy's Constr., Inc.*, 2014 U.S. Dist. LEXIS 70604, \*10-11 (M.D. Tenn. May 20, 2014) (declining to consider similarly fact-intensive affirmative defense at motion to dismiss stage).

Under Tennessee law, "forfeitures are not favored" and will only extinguish an attorney's right to recover a quantum meruit fee where the misconduct is truly egregious. *Madison Tire Co.*, 1986 Tenn. App. LEXIS 3427, \*4; *see also id.* at \*7 ("it is contrary to the law to hold that any misconduct of an attorney, whether intentional or not, whether damaging to the client or not, automatically brings about forfeiture of his fees."). Whether an attorney has forfeited his right to recover a fee for work performed based on quantum meruit is a highly fact-dependent inquiry that must be determined "the light of the particular facts and circumstances of the case." *Id.* at \*5; *see*

6

*also id.* at *2-3, 8 (reversing trial court's finding that attorney forfeited right to recover fee where he abandoned representation of the plaintiff to become a law professor).

Beckwith's forfeiture defense is inappropriate for resolution at the pleadings stage because that defense must be adjudicated based on the evidence, not just Beckwith's characterizations in his MTD.[5]

### b. Forfeiture is Not Warranted Based on Tenn. R. Prof. Resp. § 1.5.

Beckwith argues that Hammervold should be barred from recovering any fee because the contingency fee agreement violated Tenn. R. Prof. Resp. § 1.5. MTD at 8-9. But Beckwith is meritless for several reasons.

First, Hammervold and Manookian did not violate Tenn. R. Prof. Resp. § 1.5(e). That rule permits lawyers who are not in the same firm to divide a contingency fee where (1) the division of the fee is in proportion to the services performed by each lawyer; (2) the client agrees to the arrangement; and (3) the total fee is reasonable.[6] Here, Beckwith expressly agreed to Hammervold assisting in the representation and splitting the contingency fee with Manookian, Compl. ¶ 29-31, 107-108, Ex. B, and he does not challenge that the overall structure of the contingency fee agreement was reasonable. *See* MTD at 7-10. Beckwith only complains that the exact fee split between Hammervold and Manookian was not identified in the contingency agreement at the outset of the representation. MTD at 10. But Beckwith ignores that Manookian and Hammervold's final fee split was to be based on their actual division of labor in the case. Compl. ¶ 107. This is

---

[5] Beckwith does not cite any case where a complaint was dismissed pursuant to Rule 12(b)(6) (or even a state law equivalent) based on a forfeiture affirmative defense.

[6] The Tennessee Rules of Professional Conduct are "designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies," and not "to be a basis for civil liability." Tenn. R. Prof. Cond. Preamble and Scope at [21]. The "violation of a Rule does not necessarily warrant any other nondisciplinary remedy" and "the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons." *Id.* The Rules do "not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule." *Id.*

7

not only appropriate, but *required* by Tenn. R. Prof. Resp. § 1.5(e)(1). No final division of contingency fee between Hammervold and Manookian was ever presented to Beckwith for his approval, *see* MTD at 8, because Beckwith terminated the contingency fee agreement before the conclusion of the case.

Second, even if the contingency fee agreement violated Rule 1.5, the violation would be purely technical, with no impact on Beckwith. When the contingency fee agreement was negotiated in 2015, Beckwith was: (1) an extremely wealthy and sophisticated party; (2) represented by separate in-house counsel; and (3) experienced with litigation. *See* Compl. ¶¶ 12, 16, 26, 102. Beckwith does not complain that the contingency fee agreement was substantively unfair *to him* in any way. The fee split percentage among the attorneys would realistically only impact Manookian or Hammervold because the overall fee paid by Beckwith would remain the same regardless. *See* Compl. Ex. B. Beckwith suffered no harm whatsoever from anything Hammervold did as his attorney. To the contrary, Beckwith significantly benefitted from Hammervold's successful efforts on his behalf. *Id.* at ¶¶ 100-103.

Finding forfeiture in this case – based on this inconsequential issue – would be particularly harsh and unjust because Beckwith not only allowed Hammervold to labor for over three years (under the reasonable assumption Hammervold would be paid for his work (after this issue was known to Beckwith) – but affirmatively and directly instructed Hammervold to perform significant work on his behalf. *See e.g.,* Compl. ¶¶ 58, 63-67, 78-80, 83-84. Since Hammervold lived out-of-state, he also had to pay for travel to Tennessee to perform work on Beckwith's behalf on multiple occasions. *See id.* at ¶¶ 50, 79. Hammervold also advanced expenses on Beckwith's behalf that Beckwith has still refused to reimburse. *See* Compl. ¶¶ 1, 104.

Courts have found that forfeiture is inappropriate in cases involving far less problematic issues with contingency fee agreements. In *Cummings v. Patterson*, the lawyers included a right to "veto" any settlement the client wanted to enter and attempted to invalidate their client's settlement based on that provision. 59 Tenn. App. 536, 540 (Tenn. Ct. App. 1968). Although this provision was "completely void as against public policy," the court still found that but still found that it would be "inequitable and unjust to permit the client to profit by an innocent inclusion of this obnoxious provision in the contract" and affirmed the lower court's award of a fee based on quantum meruit. *Id.* at 541; *see also Seiden Law Grp., P.C.,* 2021 IL App (1st) 200877, *P24 ("Because we have found that the missing percentage recovery [in the contingency agreement] was fatal to the contingency-fee agreement's enforceability [pursuant to Rule 1.5] and, thus, there was not a valid and enforceable agreement between the parties, the court erred by dismissing Seiden Law's quantum meruit count. . .").

    **c. Forfeiture is Not Warranted Based on Hammervold's *Ad Damnum* in this Case.**

Beckwith also argues that Hammervold should forfeit any right to recover based on quantum meruit because his *ad damnum* in this case is "exorbitant." MTD at 13 (citing *White v. McBride,* 937 S.w.2d 796, 803 (Tenn. 1996)), but Beckwith is wrong.

In *White v. McBride,* the Tennessee Supreme Court reversed a lower court's award of quantum meruit fees where the attorney had entered into an agreement with a client for a "clearly excessive and unreasonable fee." 937 S.W.2d 796, 799 (Tenn. 1996). The client's wife had died and there was no question that he was entitled to at least 1/3 of her estate. *Id.* But, the lawyer entered into a contingency fee agreement where he would be entitled to 1/3 of his client's inheritance. *Id.* at 800. The lawyer ultimately worked 114 hours on the case and sought to recover $108,291 (representing 1/3 of the $349,000 inheritance). *Id.* at 799. The court noted that the fee

9

would have equated to $950 an hour when judges typically awarded a maximum hourly rate of $150/hour for probate work at the time. *Id.* at 799, n. 3. The court found that the attorney forfeited the right to earn any fee because he had violated a fiduciary duty with the client in entering such an unreasonable contingency fee agreement. *Id.* at 803. There is no analog between *White* and this case for many reasons.

First, the *White* case does not suggest that an attorney should forfeit any right to a quantum meruit fee based on the *ad damnum* in their complaint. In *Alexander v. Inman*, the Tennessee Supreme Court expressly limited its previous holding from *White* to circumstances where an attorney enters into a contingency fee agreement where the overall fee is unreasonable. 974 S.W.2d 689, 693 n. 6 (Tenn. 1998). Here, Beckwith does not claim that the contingency fee was an unreasonable fee.[7] *See generally* MTD. Instead, Beckwith only argues that Hammervold's *ad damnum* of $250,000 in this lawsuit is an unreasonable fee. MTD at 13. The holding in *White* should not be applied to an *ad damnum* in a quantum meruit because it was based on a lawyer's fiduciary duty to the client when entering a contingency fee agreement. 937 S.W.2d at 803. Here by contrast, Hammervold did not have a fiduciary duty to Beckwith when he set the *ad damnum* in a lawsuit. When Hammervold was acting as Beckwith's lawyer, he did not do anything akin to the *White* case that violated a fiduciary duty owed to Beckwith.[8] In any event, Hammervold simply seeks an award reflecting the actual value of the services he provided Beckwith. That amount must be determined by this Court and Hammervold is confident that this Court will be able to set a reasonable fee when the proof is presented.

---

[7] The contingency agreement had a progressive tiered fee percentage, for each tier of amount recovered, ranging from 5% to 40%. Beckwith does not claim that this fee structure was unreasonable.

[8] In an attempt to disparage Hammervold, Beckwith directs the Court to unrelated allegations against Hammervold from a 2016 lawsuit. MTD at 2, n. 1. While this attack is not relevant to any of Beckwith's MTD arguments, it is also misleading because Beckwith fails to inform the Court that Hammervold prevailed against those allegations, and successfully settled a follow-on malicious prosecution lawsuit against those responsible for them. *See Hammervold v. v. Diamonds Direct USA of Dallas, LLC, et al.*, No. 4:20-CV-00165-ALM, (E.D. Tex. Feb. 27, 2020).

Second, Hammervold's *ad damnum* in this lawsuit is reasonable and not "exorbitant," particularly when reading the allegations in the Complaint in the light most favorable to Hammervold (as this Court must). Compl. at p. 27; *see* Compl. ¶¶ 21, 100-103, Ex. A thereto.

## CONCLUSION

For the foregoing reasons, Beckwith's Motion to Dismiss should be denied.

**RESPECTFULLY SUBMITTED:**

**s/Mark Hammervold**
Mark Hammervold, TN #31147
155 S. Lawndale Ave.
Elmhurst, IL 60126
mark@hammervoldlaw.com

*Pro Se Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 8, 2023, a true and correct copy of the foregoing filing was served upon all counsel of record in this proceeding through the ECF and through the following counsel by email:

> Jamie Cotter (cotter@spencerfane.com) (*pro hac vice*)
> Bethany Vanhooser (bvanhooser@spencerfane.com)
> Spencer Fane LLP
> *Attorneys for Defendant*

*/s/ Mark Hammervold*