IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| MARK HAMMERVOLD, | ) |
| Plaintiff, | ) |
| vs. | ) No. 3:22-CV-01053 |
| LARRY BECKWITH, | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM**

Defendant Larry Beckwith ("Mr. Beckwith"), by and through counsel, respectfully submits this Reply in Support of his Motion to Dismiss Plaintiff Mark Hammervold's ("Hammervold") Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

**INTRODUCTION**

In support of his claim for recovery of attorneys' fees under quantum meruit, Hammervold continues to rely on the fact that "an attorney is entitled to compensation based on quantum meruit when they were working on a contingency fee basis, but the client or attorney terminates the representation before the end of the case." (Hammervold Response, Dkt. 24.) This is consistent with the allegations relied upon throughout the Complaint to support his claims. (Compl. ¶¶ 110, 111, D.E. 1.) However, as made clear by the explicit language of the Manookian Engagement Agreement, Hammervold was not a party to the contingency fee agreement. (*See* Compl., Exhibit B, D.E. 1-2.) Despite this, the caselaw Hammervold relies on supporting his ability to recover under quantum meruit all involve an attorney and client that were clear parties to an initial contingency fee agreement. Conversely, here, Hammervold had no agreement with Mr. Beckwith,

1

contingency or otherwise. In his Response, Hammervold again downplays this fact and ignores his requirements under the Rules of Professional Responsibility related to this.

## ARGUMENT

Hammervold's reliance on the general principle that an attorney may recover fees under the theory of quantum meruit following the existence of a contingency fee agreement is consistent with caselaw on this issue. Caselaw supports that when there *was a preexisting contingency fee agreement*, but the attorney-client relationship was terminated prior to recovery, quantum meruit may be used to recover fees. *See, e.g.*, *Adams v. Mellen*, 618 S.W.2d 485, 488 (Tenn. Ct. App. 1981; *Miltier v. Bank of Am., N.A.*, No. E2012-00393-COA-R3-CV, 2013 WL 3282939 (Tenn. Ct. App. June 26, 2013). However, this theory does not aid Hammervold's claims. As detailed in Defendant's Memorandum in Support of his Motion to Dismiss, Hammervold was not a party to the Manookian Engagement Agreement. Indeed, the Manookian Engagement Agreement expressly stated that *if* Hammervold were to "assist" in the case, Mr. Beckwith did not owe Hammervold **anything**. (Complaint, Exhibit B, D.E. 1-2.) (emphasis added). Instead, the only way that Hammervold would receive any money for the representation would be from Mr. Manookian out of his "already agreed to fee." (*Id.*). Despite this clear language, in April 2019, Hammervold and Manookian *unilaterally* determined that Manookian would assign Hammervold the contingency fee. (D.E. 1, Page ID #19, ¶ 88.) This unilateral decision to transfer a contingency fee does not create a right for Hammervold to benefit under the Manookian Engagement Agreement. To the contrary, it violates the requirements under Rule 1.5 of the Rules of Professional Responsibility.

Even if the Court determines that Hammervold is covered by the Manookian Engagement Agreement, Hammervold should be barred from recovering any fees due to the failure to comply

2

with Rule 1.5 requiring an express agreement as to Hammervold's fee. *See, e.g.*, *Madison Tire Co., Inc. v. Weaver*, 1986 WL 12493, at *2 (Tenn. Ct. App. Nov. 7, 1986) ("misconduct in violation of a statute or acts against public policy, or in breach of an attorney's fiduciary duty to his client, may support a complete forfeiture of fees); *White v. McBride*, 937 S.W.2d 796, 803 (Tenn. 1996). Hammervold contends that the Motion to Dismiss should be denied because Mr. Beckwith's forfeiture affirmative defense is premature. Hammervold's categorization of Defendant's argument as an affirmative defense is inaccurate and incomplete. Defendant's Motion to Dismiss does not merely allege that Hammervold has forfeited a claim to fees that he is otherwise entitled to. Rather, the Motion argues that based on the allegations in the Complaint, Plaintiff was never entitled to fees under *any agreement*, contingency or otherwise, and that allowing Hammervold to recover fees now would be in direct contradiction to the Rules of Professional Responsibility. Hammervold's categorization of Defendant's argument as an affirmative defense does not mean that Defendant's argument cannot be successful at the motion to dismiss stage. Unlike cases cited by Hammervold, Mr. Beckwith does not ask this Court to assume facts or conclusions outside of the Complaint. *See, e.g.*, *Nason Homes, LLC v. Billy's Constr., Inc.*, No. 3:14–cv–0566, 2014 WL 2117535 (M.D. Tenn. May 21, 2014). Rather, Defendant's argue that taking the allegations in the Complaint as true, Plaintiff's Complaint should be dismissed for failure to state a claim.

Hammervold also argues that any error in the Manookian Engagement Agreement was "purely technical" and would be "inconsequential" to Mr. Beckwith. (Hammervold Response, Dkt. 24, pg. 7-8.) As an initial matter, Hammervold's argument ignores that the Manookian Engagement Agreement provides no information as it relates to Hammervold; his payment, or the extent he would be consulted with our involved in the case. (D.E. 1-2.) To the contrary, it explicitly states that "the split of the contingent attorney fee would be determined later among the attorneys

3

and approved by the client." (D.E. 1, Page ID #3, ¶ 11.) The misleading language in the Manookian Engagement Agreement cannot be read as satisfying the requirements of Rule 1.5 or being a minor, inconsequential snafu. Reading the language in the way Hammervold contends would be in direct contradiction with the Manookian Engagement Agreement.

Hammervold argues that even if the Court found that he was not a party to the Manookian Engagement Agreement, he can still recover under quantum meruit. However, Hammervold does not cite to a single case to support this novel argument. Indeed, in every case Hammervold cites, the parties had a prior agreement for legal services. Hammervold had no such agreement here.

Perhaps most importantly, Hammervold's contention is contrary to his ethical obligations and ignores the requirements under Rule 1.5(b). Rule 1.5(b) clearly requires that "the scope of representation and the basis or rate of the fee and expenses for which the client will be responsible *shall* be communicated to the client . . . before or within a reasonable time after commencing the representation." Aside from his contention that he was a part of the Manookian Engagement Agreement, which fails as a matter of law, Hammervold's Complaint sets forth no allegations that the scope of his representation and the basis or rate of the fees and expenses that Mr. Beckwith would be responsible for were communicated to him at all. In fact, the Complaint does not allege that any bill outlining Hammervold's hours or hourly rate was ever provided to Mr. Beckwith. This is a clear violation of the Rules of Professional Conduct and is not consistent with cases supporting the application of quantum meruit for attorneys' fees in cases where the parties had previously complied with Rule 1.5(b).

Instead, the Complaint focuses exclusively on the existence of the Manookian Engagement Agreement and Hammervold being a party to it. Hammervold pleads in his Complaint that Beckwith should have understood that Hammervold expected to be compensated. (D.E. 1, Page

4

ID #23, ¶¶ 103, 112.) However, the Manookian Engagement Agreement indicated the opposite, stating that "[a]ll compensation to Mr. Hammervold is out of my already agreed upon fee and ***does not cost you anything additional***." (Compl., Ex. B., D.E. 1-2.) *See, e.g.*, *Mitch Grissim & Assocs. v. Blue Cross & Blue Shield of Tenn.*, 114 S.W.3d 531, 537 (Tenn. Ct. App. 2002). The Complaint goes on to allege that Manookian *unilaterally* assigned his interest under Manookian's agreement with Mr. Beckwith to Hammervold. (D.E. 1, Page ID #19, ¶ 88.) The language of the Manookian Engagement Agreement and other allegations in the Complaint do not support that Mr. Beckwith could have expected to pay Hammervold separately, but rather that Manookian would take care of any payment to Hammervold. Therefore, Hammervold cannot establish an essential element of his claims.

## CONCLUSION

For the foregoing reasons and the reasons. provided in Defendant's Memorandum in Support of his Motion to Dismiss, Defendant respectfully requests that this Court enter an order dismissing Plaintiff's Complaint.

Respectfully submitted,

*/s/ Bethany Vanhooser*
Bethany M. Vanhooser, BPR # 038594
SPENCER FANE LLP
511 Union Street, Suite 1000
Nashville, TN  37219
bvanhooser@spencerfane.com

Jamie Cotter, *admitted pro hac vice*
SPENCER FANE LLP
1700 Lincoln Street, Suite 2000
Denver, CO 80203
jcotter@spencerfane.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

   The undersigned hereby certifies that a correct and true copy of the foregoing document was served on the following individuals via the Court's ECF system and electronic mail on March 22, 2023:

Mark Hammervold
155 S. Lawndale Ave
Elmhurt, IL 60126
mark@hammervoldlaw.com


                  */s/ Bethany Vanhooser*