# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **MARK HAMMERVOLD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-001053** |
| | ) | **Judge Aleta A. Trauger** |
| **LARRY BECKWITH,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court is defendant Larry Beckwith's Motion to Dismiss (Doc. No. 21), supported by a Memorandum of Law (Doc. No. 22). Plaintiff Mark Hammervold opposes the motion (Doc. No. 24), and the defendant has filed a Reply in further support of his position (Doc. No. 27). For the reasons set forth herein, the Motion to Dismiss will be denied.

## I. FACTUAL ALLEGATIONS

Mark Hammervold's Complaint (Doc. Nos. 1 (redacted), 5 (sealed)), filed on December 22, 2022, alleges as follows. Hammervold is an attorney licensed to practice law in Tennessee, among other states. He became licensed in 2012. In 2015, he started his own independent law practice, but he also, during that period of time, associated with the law firm of Cummings Manookian PLC as co-counsel.

Defendant Larry Beckwith is the majority shareholder in a successful company called LBDB Holdings, LLC ("LBDB"). For reasons that are not germane to this lawsuit, Beckwith discovered on July 28, 2014 that he had a "meritorious and highly valuable" malpractice claim against the accounting firm Lattimore Black, Morgan & Cain, PC ("Lattimore"), based on a breach of a duty of confidentiality owed to Beckwith personally and potentially to LBDB as well. The

statute of limitations on the claim, under Tennessee law, was set to expire one year later, on July 28, 2015. Beckwith and his then-counsel, who is not involved in this lawsuit, entered into a series of agreements with Lattimore to toll the running of the statute of limitations while the parties attempted to settle Beckwith's claim. The final agreement extended the tolling through January 22, 2016, thus leaving Beckwith an additional sixty days, until March 23, 2016, to file his accounting malpractice lawsuit against Lattimore.[1]

In January 2016, Beckwith contacted attorney Brian Manookian about retaining him to prosecute the accounting malpractice claim against Lattimore on a contingency fee basis. The plaintiff alleges "upon information and belief" that Manookian expressed interest in taking the case but also explained to Beckwith that he would want to bring in Hammervold as co-counsel, with whom Manookian would split the contingency fee. Beckwith understood and agreed. On January 18, 2016, Beckwith and Manookian, on behalf of Cummings Manookian PLC, executed a written Attorney-Client Agreement ("Agreement") that states, in relevant part:

> It is our firm's practice to enter into engagement letters with our clients. This letter serves the general purpose of setting forth the basis on which we will represent you . . . .
>
> **Client and Scope of Representation**
>
> Our client will be you in your individual capacity . . . . We will represent you in the matter involving [Lattimore's] breach of duties and contract arising out of a valuation performed in 2011.
>
> All work on this matter will be done by Brian Manookian or Mark Hammervold. . . .
>
> **Contingency Fee**
>
> Our fees for work on this case will be on a contingency basis. . . . If you do not receive a settlement, judgment, or award, we do not receive a fee. The contingency

---

[1] Beckwith and his then-counsel made a deliberate decision not to make LBDB a party to the tolling agreements, thus affirmatively choosing not to preserve any accounting malpractice claim LBDB might have against Lattimore.

fee rate is the scale we previously agreed upon [and handwritten by Beckwith in the space provided]. . . .

Additionally, I occasionally split my portion of contingency fees with Mark Hammervold when I have him assist in a case. I may have him assist in this case, and if so, you agree to my sharing of my fee with him. All compensation to Mr. Hammervold is out of my already agreed upon fee and does not cost you anything additional.

**Costs and Expenses**

There will likely be costs and expenses involved in pursuing this case. . . . We will advance those costs and expenses . . . . You remain responsible for the costs and expenses. . . .

. . . .

**Termination of Professional Relationship**

You have the right to change attorneys to another attorney or firm at any time by sending us a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, our experience, ability, reputation, the responsibility involved and the results obtained.

We may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you. A "withdrawal" by this firm does not relieve you of the responsibility to pay advance costs.

(Doc. No. 1-2, at 1–2.)

Following execution of the Agreement, Hammervold spent hundreds of hours representing Beckwith over the course of three years. During this time, Hammervold filed a timely complaint in the Circuit Court for Williamson County, Tennessee, asserting accounting malpractice claims against Lattimore. The trial court erroneously dismissed the case on statute of limitations grounds, and Hammervold pursued a successful appeal of that decision. Hammervold "took over near exclusive responsibility in representing Beckwith" in connection with a motion to alter or amend in the Circuit Court and then with the appeal. (Compl. ¶ 48.)

Beckwith and LBDB's in-house counsel, Harold Donnelly, unbeknownst to Hammervold, reached out to counsel for Lattimore as early as November 2016 about suing Manookian and Hammervold for malpractice and settling directly with Lattimore. Counsel for Lattimore informed Hammervold of the conversation, because he did not feel comfortable discussing settlement without Hammervold's permission. As of January 2017, however, Donnelly told Hammervold that Beckwith wanted Hammervold and Manookian to continue to represent him but wanted to "toll" any potential malpractice claim against them in the event the appeal of the erroneous order of dismissal was not successful. (*Id.* ¶ 54.) Hammervold, Manookian, and Beckwith entered into such a tolling agreement on January 31, 2017, providing that the claim was tolled indefinitely, until any party "provided a notice to terminate the agreement." (*Id.* ¶ 55.)

In April 2017, the Williamson County Circuit Court entered an order largely denying the motion to alter or amend judgment. Beckwith, through LBDB's General Counsel, Bill Hankins, instructed Hammervold to proceed with pursuing an appeal. Hammervold, who was designated as lead counsel on the appeal, worked diligently over the next several months on drafting the appellate brief, while Beckwith, Hankins, and Donnelly all remained extremely involved in the process of formulating the arguments to be raised on appeal, allegedly insisting on the inclusion of legally unsupportable arguments and generally increasing the amount of time it took for Hammervold to complete the appellate brief.

In August 2017, just prior to the deadline for filing the appellate brief, Beckwith and his in-house attorneys also sought to include as attorney of record another attorney with whom Manookian often associated, whose name had been on the initial complaint but who had not participated in any way in the drafting or filing of the complaint, the motion to alter or amend, or the appellate brief. Manookian interpreted the push to include this other attorney as an attempt to

"manufactur[e] some basis to include [the attorney] as a defendant in a legal malpractice claim that Beckwith had previously threatened, even though [he] had no involvement whatsoever in the case." (Compl. ¶ 68.) The effort was upsetting to both Hammervold and Manookian, who fired off a late-night email on August 18, 2017 responding to the request to include the attorney. Although the email was sent to Beckwith, Donnelly, and Hankins as well as Hammervold and the other attorney, it was apparently intended only for the latter two. Aside from expressing irritation at the repeated demands made by Beckwith "and his revolving third-tier 'in-house counsel,'" Manookian indicated a desire to "discuss whether continuing any relationship with these individuals makes sense under the circumstances." (*Id.* ¶ 71.) When Beckwith responded, again reiterating that the third attorney was one of his lawyers and needed to be included on the brief, Manookian wrote back, stating in no uncertain terms that the attorney "is not your lawyer in this matter, nor is he participating in this appeal." (Compl. ¶ 72.) He concluded: "Let's talk next week about my role going forward. I intend to pursue the appeal in this matter, but I will withdraw at its conclusion . . . ." (*Id.*)

According to Hammervold, no one understood these "late-night emails" to signal a termination or modification of the Agreement, and Beckwith, Donnelly, and Hankins expected Manookian and Hammervold to continue to represent Beckwith in the case. (*Id.* ¶ 73.) In any event, Hammervold proceeded with finalizing the appellate brief, which was filed on August 21, 2017. Hammervold traveled from Chicago, where he lived at the time, to Nashville for the oral argument before the Tennessee Court of Appeals on December 6, 2017. Following oral argument, Hammervold continued to respond regularly to Beckwith's requests for updates on the status of the appeal.

The appeal remained pending for over a year after oral argument. In the interim, Manookian was suspended from the practice of law on September 21, 2018. (*Id.* ¶ 95.) Hammervold, however, remained on the case. During that time period, besides responding to Beckwith's requests for updates, Hammervold reviewed and researched serial notices of supplemental authority filed by Lattimore's counsel. On March 21, 2019, the Tennessee Court of Appeals issued an order finding that the complaint asserting Beckwith's accounting malpractice claim was timely—"an unequivocal win for Beckwith." (*Id.* ¶ 82.) Hammervold notified Beckwith on the day the opinion was issued. In a telephone call a few days later, the two discussed the "next steps." (*Id.* ¶ 83.) Shortly afterwards, Hammervold began the preparation of a motion to disqualify the trial judge once the case was remanded.

A few weeks later, in mid-April, another attorney for Beckwith, Stacey Koju, reached out to Hammervold to notify him that Beckwith was "weighing his options" regarding whether to have Hammervold and Manookian continue to represent him going forward. (*Id.* ¶ 85.) In a subsequent call, Koju suggested that Beckwith was concerned that Manookian and Hammervold might have a quantum meruit claim against him based on their three years of representing him in the case against Lattimore. Koju "floated the possibility" of Beckwith's "buying off Hammervold and Manookian's quantum meruit claim for a lowball amount" and also suggested that, because they had committed malpractice, they were not entitled to any fee. (*Id.* ¶ 87.)

Hammervold discussed the call with Manookian later the same day. Manookian agreed to assign to Hammervold the entirety of any contingency fee to which he would be entitled under the Agreement, since Hammervold had done "nearly all of the work representing Beckwith," devoting "hundreds of hours" to the case. (*Id.* ¶ 88.)

Hammervold emailed Koju on April 18, 2019, outlining the basis for a quantum meruit claim and presenting a confidential settlement offer under Federal Rule of Evidence 408, in the event that Beckwith decided to terminate the Agreement. Koju did not respond, and Hammervold sent a follow-up email a week later, asking whether Beckwith intended to "terminate [Hammervold] from representing him." (*Id.* ¶ 90.) Finally, on May 6, 2019, Koju responded that "Mr. Beckwith would not like to proceed with your representation of him in the [Lattimore] Litigation." (*Id.* ¶ 92.) She thereafter instructed Hammervold to prepare and file a motion to withdraw. (*Id.* ¶ 97.) Hammervold filed motions to withdraw in the Tennessee Court of Appeals and the Tennessee Supreme Court, as Lattimore had filed a petition to appeal to that court.

Regarding Hammervold's quantum meruit claim, Koju responded that Beckwith's position was that he did not owe Manookian and Hammervold anything, because (1) Manookian had terminated the representation in his August 19, 2017 email and "as a result of [Manookian's] suspension from the practice of law"; and (2) the appeal was only necessitated by Cumming Manookian's purported error in the untimely filing of the complaint in the Williamson County Circuit Court and Cumming Manookian's need to "avoid malpractice as a result thereof." (*Id.* ¶ 93.) The plaintiff asserts that these reasons are legally meritless. (*Id.* ¶ 94.)

On July 29, 2019, Hammervold sent Beckwith notice terminating the January 31, 2017 tolling agreement. Beckwith chose not to file suit for malpractice, and the limitations period for doing so expired on November 6, 2019. (*Id.* ¶ 99.)

Hammervold alleges that he devoted hundreds of hours to Beckwith's case from January 18, 2016 through July 26, 2019, during which, among other things, he prepared and filed the complaint within a short period of time of being retained, challenged the trial court's erroneous order dismissing the case as time-barred, and pursued the successful appeal in the Tennessee Court

of Appeals. He alleges that Beckwith benefited from his work, particularly insofar as Hammervold's representation had the effect of preserving Beckwith's accounting malpractice claim, insofar as he filed a timely complaint and then saved the case from being dismissed through his excellent representation on the appeal. He indicates that, if Beckwith's business's in-house attorneys and General Counsel had prevailed in directing Beckwith's appellate strategy, Beckwith would have lost the appeal. Hammervold further alleges that both he and Beckwith expected that Hammervold would be compensated from a contingency fee, until Beckwith terminated the Agreement without cause.

Hammervold also alleges that he personally paid certain fees and expenses chargeable to Beckwith during the course of the representation, but Beckwith has refused to reimburse him for those expenses.

Based on these allegations, Hammervold brings claims under the doctrines of quantum meruit and unjust enrichment. He asserts damages in excess of $250,000 "for the actual value of the service he provided Beckwith as his attorney in an amount to be determined by the proof presented," as well as for reimbursement of expenses. (Compl. at 27.) Beckwith responded by filing his Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

## III. ANALYSIS

Beckwith's motion argues that the Complaint fails to state a claim for which relief may be granted, insofar as (1) Hammervold was not a party to the Agreement; (2) even if he were, the Agreement fails to satisfy Rule 1.5 of the Rules of Professional Responsibility, because it does not "state the percentage of the [contingency] fee that would accrue to Mr. Manookian, nor does it state the extent to which Mr. Hammervold would be consulted or if he would be consulted at all," and Beckwith never agreed to Manookian's supposed agreement to assign his portion of the contingency fee to Hammervold; (3) Manookian terminated the Agreement on or about August 18, 2017, when he communicated in an email his intention to withdraw at the conclusion of the appeal; and (4) the Agreement "undisputedly terminated" on September 21, 2018, when

Manookian was suspended from the practice of law. (Doc. No. 22, at 6–9.) Beckwith asserts that, because Hammervold was not a party to his Agreement with Manookian and does not allege the existence of any other engagement agreement between Beckwith and Hammervold directly, he is not entitled to recover any fee. Beckwith also asserts that, to the extent Hammervold contends that some oral fee agreement exists, any such agreement would be in violation of Rule 1.5(c). Beckwith asserts that Hammervold is not entitled to fees and that his claims fail as a matter of law.

Hammervold argues, in response, that the Complaint clearly alleges facts sufficient to state a claim for recovery under a theory of quantum meruit and/or unjust enrichment, which does not require the existence of an enforceable contract. He argues that, to the extent Beckwith is arguing that Hammervold forfeited a right to a fee because of some violation of the Rules of Professional Responsibility, forfeiture is an affirmative defense not appropriately raised in a motion to dismiss and, in any event, forfeiture is not warranted. Beckwith's Reply continues to argue that Hammervold is not entitled to fees because he was not a party to the Manookian Agreement and that any contention to the contrary violates Hammervold's ethical obligations under Rule 1.5.

### A. The Doctrine of Quantum Meruit

The Complaint in this case purports to set forth separate claims for recovery under the doctrines of quantum meruit and unjust enrichment. In Tennessee, however, it is well established that quantum meruit and unjust enrichment are "essentially the same" and that courts "frequently employ the various terminology interchangeably to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between parties, regardless of their assent thereto." *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966). The court, like the defendant, accordingly treats the Complaint as asserting a single claim.

The Tennessee Supreme Court defines quantum meruit as

an equitable substitute for a contract claim pursuant to which a party may recover the reasonable value of goods and services provided to another if the following circumstances are shown:

1. There is no existing, enforceable contract between the parties covering the same subject matter;

2. The party seeking recovery proves that it provided valuable goods or services;

3. The party to be charged received the goods or services;

4. The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and

5. The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.

*Swafford v. Harris*, 967 S.W.2d 319, 324 (Tenn. 1998) (citing *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995)). "Liability under quantum meruit is based on a legally implied promise to pay a reasonable amount for goods or services received." *Castelli*, 910 S.W.2d at 427.

Courts have permitted attorneys to recover under the doctrine of quantum meruit where, for example, an existing contingency fee agreement is rendered unenforceable as a whole as the result of its inclusion of an impermissible term, *see, e.g.*, *Cummings v. Patterson*, 442 S.W.2d 640 (Tenn. Ct. App. 1968), or omission of a necessary term, *see, e.g.*, *Seiden L. Grp., P.C. v. Segal*, 202 N.E.3d 343 (Ill. Ct. App. 2021), *appeal denied*, 187 N.E.3d 712 (Ill. 2022). In addition, courts permit attorneys to recover a reasonable fee under a quantum meruit theory when a contingency fee agreement is terminated prior to resolution of the proceeding to which it pertains. *See, e.g.*, *Mitch Grissim & Assocs. v. Blue Cross & Blue Shield of Tenn.*, 114 S.W.3d 531, 537 (Tenn. Ct. App. 2002).

## B.     Application of the Law to the Present Facts

In this case, Hammervold clearly alleges facts to support all of the necessary elements of a quantum meruit claim. First, there is no existing, enforceable contract between him and Beckwith. Even if Hammervold could be deemed a third-party beneficiary of the original Agreement between Beckwith and Manookian, that contract was terminated by Beckwith in May 2019.[2]

Second, Hammervold clearly alleges that he provided valuable legal services to Beckwith over the course of several years and that Beckwith knowingly received and benefited from those services. Based on the existence of the contingency fee arrangement and Beckwith's clear understanding that Hammervold, as an associate of Manookian's, was functioning as one of his attorneys, Beckwith knew or reasonably should have known that Hammervold expected to be compensated for his services.

And finally, the circumstances as alleged by Hammervold demonstrate that it would be unjust for Beckwith to retain the benefit of his services—in the form of a viable and valuable claim against Lattimore—without paying for them. Although Beckwith raises as a defense that Hammervold has somehow violated Rule 1.5(c) of the Rules of Professional Responsibility, the validity of this affirmative defense involves disputed questions of fact and has no bearing on whether the Complaint states a colorable claim for which relief may be granted. Moreover, even assuming that Hammervold somehow violated the Rules by seeking recovery of fees in this action, the Preamble to the Rules of Professional Responsibility expressly provides that "[t]he fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral

---

[2] Beckwith claims Manookian terminated it in August 2017. The court, at this juncture, views the facts in the light most favorable to the plaintiff and therefore presumes that Beckwith terminated it in May 2019. Regardless of who terminated it, however, it was clearly terminated.

proceeding or transaction has standing to seek enforcement of the Rule." Tenn. S. Ct. R. 9, Preamble & Scope ¶ 21. While an attorney's "[m]isconduct in violation of a statute or acts against public policy, or in breach of an attorney's fiduciary duty to his client, *may* support a complete forfeiture of fees," the Tennessee courts have never held that "*any* misconduct of an attorney, whether intentional or not, whether damaging to the client or not, automatically brings about forfeiture of his fees." *Madison Tire Co. v. Weaver*, No. 7, 1986 WL 12493, at \*2 (Tenn. Ct. App. Nov. 7, 1986) (emphasis added). Rather, "[e]ach case involving misconduct of an attorney and the forfeiture of his fee must be viewed in the light of the particular facts and circumstances of the case." *Id.*

To be clear, the court discerns no attorney misconduct in the facts as alleged by Hammervold. The court simply finds that, insofar as the defendant alleges that such misconduct precludes the recovery of fees in this case, that argument is not one properly made at this juncture in the proceedings. The Complaint clearly states facts sufficient to support a claim for recovery of attorney's fees under a theory of quantum meruit, and the defendant's motion is without merit.

## IV. CONCLUSION

For the reasons set forth herein, the defendant's motion will be denied. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge