IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **Mark Hammervold,** | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) NO. 3:22-CV-01053 |
| **Larry Beckwith,** | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Larry Beckwith ("Beckwith" or "Defendant") files this Memorandum of Law in Support of his Motion for Summary Judgment ("Motion") and requests that this Court grant his Motion and dismiss Plaintiff's claims for quantum meruit and unjust enrichment, thereby dismissing Plaintiff's Complaint in its entirety. In support thereof, Defendant respectfully sets forth the following:

This lawsuit arises out of Hammervold's prior "associated" legal representation of Beckwith in a case that is still pending in state court in Williamson County, Tennessee ("Underlying Case"). In the Underlying Case, Beckwith hired Brian Manookian ("Manookian") to represent him under a contingency fee agreement ("Manookian Engagement Agreement"). The Manookian Engagement Agreement explained that Hammervold *may* assist Manookian with the representation, and if so, Hammervold would be paid by Manookian "sharing" his fee with Hammervold. The Manookian Engagement Agreement expressly stated "[a]ll compensation to Mr. Hammervold is out of my already agreed upon fee and *does not cost you anything additional*." (Complaint, Exhibit B, D.E. 1-2.) (emphasis added). At no point did Hammervold or Manookian communicate to Beckwith that he would owe Hammervold compensation separate from the

Manookian Engagement Agreement, which stated that Manookian would be compensated out of Manookian's agreed upon fee and it would not cost Beckwith anything additional. Moreover, Hammervold never communicated any terms of representation or hourly rate for his services during Manookian's involvement in the case or after Manookian's withdrawal. Therefore, Beckwith reasonably understood that Hammervold's compensation would be taken care of by Manookian directly and he would not be responsible for compensating Hammervold.

As discussed more fully below, Hammervold has not and cannot set forth facts supporting essential elements of his claims. As an initial matter, Hammervold cannot establish three essential elements of his claims. Specifically, Hammervold cannot show (1) that he provided valuable goods and services, (2) that it would be unjust for Beckwith to retain his services without paying for them, or (3) that Beckwith should have reasonably understood that Hammervold expected to be compensated. In addition, Hammervold has failed to point to any evidence in the record that supports a finding that a fee of over $250,000 is reasonable. In fact, the evidence in the record demonstrates that such a fee is unreasonable. Regardless, Hammervold's clear violation of Rule 1.5 of the Rules of Professional Responsibility should bar recovery of his fees entirely. For these reasons, Hammervold is not legally entitled to recover fees under quantum meruit or unjust enrichment and his Complaint should be dismissed in its entirety.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On January 18, 2016, Beckwith entered into the Manookian Engagement Agreement. (*See* Defendant's Statement of Undisputed Material Fact ("SUMF") No. 1.) The Manookian Engagement Agreement was with Manookian's law firm, Cummings and Manookian, which Hammervold is not a part of. (SUMF Nos. 1 & 2.). The Manookian Engagement Agreement expressly provided:

> Additionally, I occasionally split my portion of contingency fees with Mark Hammervold when I have him assist in a case. I may have him assist in this case, and if so, you agree to my sharing of my fee with him. All compensation to Mr. Hammervold is out of my already agreed upon fee and does not cost you anything additional.
>
> You have the right to change attorneys to another attorney or firm at any time by sending us a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, our experience, ability, reputation, the responsibility involved and the results obtained.
>
> We may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you. A "withdrawal" by this firm does not relieve you of the responsibility to pay advanced costs.

(SUMF No. 3.) The Manookian Engagement Agreement clearly states that Manookian "occasionally" splits a "portion of the contingency fee with Mark Hammervold." (*Id.*) Even if Manookian decided to split his fee with Hammervold, the Manookian Engagement Agreement expressly stated that such a split would be out of the "already agreed upon fee and does not cost you [Beckwith] anything additional." (*Id.*) The Manookian Engagement Agreement also specifies that if Manookian's services were "discharged," Beckwith could remain liable to pay "from the proceeds of any recovery a reasonable fee for the work we have performed." (*Id.*) If, however, Manookian withdrew from the representation, Beckwith was responsible to pay only "advanced costs." (*Id.*) Even the Complaint admits that "the split of the contingent attorney fee ***would be determined later*** among the attorneys and approved by the client." (SUMF No. 4; Complaint, D.E. 1, Page ID #3, ¶ 11.) (emphasis added).

After the execution of the Manookian Engagement Agreement, on the evening of January 21, 2016, Manookian emailed Hammervold and informed him that he would need assistance drafting the Complaint. (SUMF No. 5.) The very next day, on January 22, 2016, Manookian and

Hammervold faxed the Complaint to the court in the Underlying Case in an attempt to file it. (SUMF No. 6.) The court ultimately did not accept the Complaint until January 26, 2016, when Manookian and Hammervold properly filed the Complaint and paid the required filing fee. (SUMF No. 7.) Under Tennessee Rule of Civil Procedure 5A.02, all court documents *except complaints* can be filed by facsimile. *See* Tenn. R. Civ. P. 5A.02; SUMF No. 11. In addition, payment of a filing fee is required at the time of filing. (SUMF No. 8.) The defendant in the Underlying Case filed a motion for summary judgment based on the statute of limitations, which was believed to run on January 22, 2016 by all parties, because the complaint was not technically filed until January 26, 2016. (SUMF No. 10.) Ultimately, on August 5, 2016, the state court dismissed the complaint finding that it was not timely filed and that Manookian and Hammervold had filed it at least one day late. (SUMF Nos. 11-14.) The state court pointed out that even assuming that the court's partial closure on January 22, 2016 provided additional time to file the complaint, pursuant to the Tennessee Rules of Civil Procedure, the deadline then moved to the next business day that the court was open, which was January 25, 2016. (SUMF No. 14.) However, for whatever reason, Hammervold and Manookian waited and did not properly file the complaint or pay the filing fee until January 26, 2016. (SUMF Nos. 8, 9.) Almost a month after the court's decision, on September 1, 2016, Beckwith called the clerk after being unable to reach Manookian or Hammervold and found out that an order dismissing the complaint had been entered. (SUMF No. 15.)

All work Hammervold did after this was to avoid a malpractice claim due to the untimely filing of the complaint. A motion to amend the court's order dismissing the complaint was filed, which the court denied because "Mr. Beckwith failed to timely file his lawsuit." (SUMF No. 16.) Thereafter, Manookian, with the assistance of Hammervold, pursued an appeal of the state court's order. (SUMF No. 17.)

During the appeal of the state court dismissal, on April 18, 2017, Manookian emailed Hammervold stating "[l]et's discuss whether continuing any relationship with these individuals makes sense under the circumstances." (SUMF No. 18.) In addition, on April 19, 2017, Manookian told Beckwith: "Let's talk next week about my role going forward. I intend to pursue the appeal in this matter, ***but I will withdraw at its conclusion***, as is my prerogative under our engagement letter. You need to arrange for Bill or Harold or someone else to take my place." (SUMF No. 19 (emphasis added).) Therefore, Hammervold forewent any future payment from Beckwith under the Manookian Engagement Letter.

On or about September 21, 2018, Manookian was suspended from the practice of law. (SUMF No. 20.) Again, this would render Beckwith's Engagement Agreement with Manookian void and no payment would be required.

While Manookian failed to undertake further work on the appeal, Hammervold continued with the appeal, presumably pursuant to his separate agreement with Manookian. (SUMF Nos. 21, 27.) Hammervold did not enter into any engagement letter directly with Beckwith. (SUMF No. 22.) Hammervold did not discuss the terms of his representation with Beckwith. (SUMF Nos. 23, 24.) Hammervold and Beckwith never discussed what rate he would charge, what percentage of any judgment or settlement he would receive, or what amounts would be due and owing in the event that he stopped representing Beckwith. (*Id.*) In fact, based on the Manookian Engagement Letter, it was Beckwith's understanding that Hammervold would solely be compensated by Manookian. (SUMF No. 26.)

Ultimately, the Tennessee Court of Appeals held that the claim for professional negligence in complaint was not filed beyond the statute of limitations period due to the applicable tolling agreement tolling the statute until after January 22, 2016. (SUMF No. 29; *see Beckwith v. LBMC*,

-5-

*P.C.*, No. M2017-00972-COA-R3-CV (Tenn. Ct. App. Dec. 6, 2017)). However, the Court found that all claims other than the professional negligence claim were correctly dismissed under the applicable statute of limitations. (*Id.*) The Court made no determination regarding whether Hammervold and Manookian's filing date should be considered January 22, 2016. (*Id.*)

Around this same time, on April 18, 2019, Hammervold alleges that he and Manookian had a call and "Manookian agreed to assign the entire portion of the contingency fee" to Hammervold. (SUMF No. 31.). This alleged agreement was not previously discussed or communicated to Beckwith, nor did he consent to it. (SUMF No. 32.) Despite this lack of consent, later that same day, Hammervold emailed Beckwith's counsel contending that he was owed money under the Manookian Engagement Agreement. (SUMF No. 33.) Manookian has not sought payment from Beckwith for himself for the services provided in the Underlying Case. (SUMF No. 34.) By emails between counsel, Hammervold was expressly notified on May 7, 2019, that Beckwith would not like to proceed with Hammervold's representation in the Underlying Case. (SUMF No. 35.)

Discovery has shed no light on Hammervold's purported work completed in the Underlying Case. Hammervold has not provided any estimation of the number of hours of work performed or described the work performed. (SUMF No. 36; Ex. 12 attached hereto.) In fact, Hammervold refused to provide this information stating: "Asking Plaintiff to recreate time entries for each component of work he did for Beckwith would be unduly burdensome and is not justified by the demands of this case, particularly since quantum meruit is not necessarily based on the

amount of hours devoted to the representation, but rather, the value created and/or preserved by the representation." Plaintiff further stated:

> **3. Describe with specificity the damages you sustained as a result of the events alleged in your Complaint.**
>
> **ANSWER:** Plaintiff is entitled to recover a fair and reasonable fee for the value his work created and preserved for Larry Beckwith. However, a computation of damages is premature as said computation would rely, at least in part, on information yet to be obtained through discovery. As already briefed by the Parties, the value of Plaintiff's *quantum meriut* claim depends, in part, on the value of Beckwith's accounting malpractice claim against Lattimore.

(SUMF No. 36.)

According to Beckwith's expert, assuming that Hammervold is entitled to recover under quantum meruit, at most he is entitled to recover $4,500. (SUMF No. 37.)

## ARGUMENT

### I. Standard of Review

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms., Inc.*, 862 F.2d 597, 601 (6th Cir. 1988). In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [their] asserted causes of action." *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D.Tenn.1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir.1994). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

-7-

## II. Plaintiff has not and cannot established essential elements of his claims and they fail as a matter of law.

Plaintiff cannot meet his burden of establishing three essential elements of his claims for unjust enrichment and quantum meruit. As the Court recognized in its order on Defendant's Motion to Dismiss (Dkt. 28), actions "brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same." *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966). Plaintiff's claims for unjust enrichment and quantum meruit will therefore be analyzed collectively herein.

Unjust enrichment and quantum meruit are equitable in nature. Recovery under these theories is "based on a legally implied promise to pay a reasonable amount for goods or services received and is therefore limited to the *actual value of the goods or services received*." *Mitch Grissim & Assocs. v. Blue Cross & Blue Shield of Tenn.*, 114 S.W.3d 531, 537 (Tenn. Ct. App. 2002) (citing *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn.Ct.App.1995) (emphasis added) (internal citations omitted). The theory of unjust enrichment is "founded on the principle that a party receiving a benefit desired by him, under circumstances rendering it inequitable to retain it without making compensation, must do so." *See MDT Servs. Group, LLC v. Cage Drywall, Inc.*, 2015 WL 736932, at *9 (M.D Tenn. Feb. 20, 2015).

To recover under these theories, the following must be proven:

(1) there must be no existing, enforceable contract between the parties covering the same subject matter;

(2) the party seeking recovery must prove that it provided valuable goods and services;

(3) the party to be charged must have received the goods and services;

(4) the circumstances must indicate that the parties involved in the transaction should have reasonably understood that the person providing the goods or services expected to be compensated;

(5) the circumstances must also demonstrate that it would be unjust for the party benefitting from the goods or services to retain them without paying for them.

*Mitch Grissim & Assocs.*, 114 S.W.3d at 537 (citing *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995)).

Here, as set forth below, Plaintiff has not and cannot establish elements (2), (4), and (5). In addition, Plaintiff cannot establish that the amount he is seeking in damages, over $250,000, is reasonable nor equitable given the facts of this case.

### A. *Plaintiff cannot show that Beckwith should have reasonably understood that Hammervold expected to be compensated for the services.*

To prove an essential element of Plaintiff's claim, Plaintiff must show that "the circumstances . . . indicate that the parties involved in the transaction should have *reasonably understood* that the person providing the goods or services *expected to be compensated*." *Mitch Grissim & Assocs.*, 114 S.W.3d at 537. Plaintiff has not and cannot set forth facts satisfying this essential element and regardless, the undisputed material facts establish that Beckwith never understood that Hammervold expected to be compensated directly by Beckwith for any services and that this understanding was reasonable.

As an initial matter, the Manookian Engagement Letter itself indicates that Beckwith would not be responsible for compensating Hammervold. The Manookian Engagement Agreement expressly states that Manookian "occasionally" splits a "portion of the contingency fee with Mark Hammervold." (SUMF No. 3.) Even if Manookian decided to split his fee with Hammervold, the Manookian Engagement Agreement expressly stated that such a split would be out of the "already agreed upon fee and does not cost you anything additional." (*Id.*) The Manookian Engagement

Agreement also specifies that if Manookian's services were "discharged," Beckwith could remain liable to pay "from the proceeds of any recovery a reasonable fee for the work we have performed." (*Id.*.) If, however, Manookian withdrew from the representation, which he did based on the undisputed material facts, Beckwith was responsible to pay only "advanced costs." Even the Complaint admits that "the split of the contingent attorney fee ***would be determined later*** among the attorneys and approved by the client." (SUMF No. 3; D.E. 1, Page ID #3, ¶ 11 (emphasis added).) As shown by the undisputed material facts, this never took place. In fact, Beckwith was never provided any information about compensating Hammervold separately or regarding terms of Hammervold's representation. Hammervold did not enter into any engagement letter directly with Beckwith. (SUMF Nos. 22, 25.) Hammervold did not discuss any terms of representation with Beckwith. (SUMF Nos. 23, 24.) Hammervold did not discuss what rate he would charge, what percentage of any judgment or settlement he would receive, or what amounts would be due and owing in the event that he stopped representing Beckwith. (*Id.*) In fact, based on the Manookian Engagement Letter, it was Beckwith's understanding that Hammervold would solely be compensated by Manookian. (SUMF Nos. 26, 27.) The undisputed facts support a finding that Beckwith was not aware that Hammervold expected to be compensated for his services separately from whatever arrangement Manookian and Hammervold had amongst themselves. Therefore, Hammervold cannot show that Beckwith should have reasonably understood that Hammervold expected to be compensated for the services.

      To the extent Hammervold is attempting to assert that he was a party or beneficiary under the Manookian Engagement Agreement, that likewise lacks merit. Hammervold was not a party to the Manookian Engagement Agreement based on the plain language of its terms. The Manookian Engagement Agreement clearly shows that it was between the firm Cummings and Manookian, of

which Hammervold is not a member, and Mr. Beckwith. (SUMF Nos. 1-3, Exhibit 1 hereto.) Hammervold did not sign the Manookian Engagement Agreement. (*Id.*) Moreover, the express language of the document states that Mr. Manookian "*may* have Mark Hammervold assist in this case" and if so, Mr. Manookian would share his fee with him. (*Id.* (emphasis added)). Manookian clearly promised that under no circumstances would Mr. Beckwith owe Hammervold ***anything***. (*Id.*) Instead, the only way that Hammervold would receive any money for the representation would be from Manookian out of his "already agreed to fee." (*Id.*). Further, even assuming that Hammervold could seek compensation under an agreement he was not a party to, the Manookian Engagement Agreement would not satisfy the requirements of the Rules of Professional Responsibility as it relates to Hammervold. Contrary to the requirements under Rule 1.5, nowhere in the Manookian Engagement Agreement does it state the percentage of the fee that would accrue to Mr. Manookian, nor does it state the extent to which Mr. Hammervold would be consulted or if he would be consulted at all. In the Complaint, Hammervold even alleges that "the split of the contingent attorney fee ***would be determined later*** among the attorneys and approved by the client." (*Id.*, Ex. 1 hereto at ¶ 11 (emphasis added).) In fact, it was not until years later, on or about April 18, 2019, that Mr. Hammervold alleges he and Mr. Manookian had a call and "Manookian agreed to assign the entire portion of the contingency fee" to Mr. Hammervold. (*Id.*, Ex. 1 hereto at ¶ 88.) A unilateral decision without the client's approval certainly does not satisfy the requirements of Rule 1.5. No proposed agreement was ever presented to or approved by Beckwith in relation to Hammervold.

### B. *Plaintiff cannot show that the services he provided were a benefit or value and that the retention of those services without payment is unjust.*

Here, elements (2) and (5) are intertwined and will thus be analyzed together. Hammervold cannot show that he provided valuable goods and services and that it would be unjust for the party

benefitting from the goods or services to retain them without paying for them. *See Mitch Grissim & Assocs. v. Blue Cross & Blue Shield of Tennessee*, 114 S.W.3d 531, 538 (Tenn. Ct. App. 2002); *see also Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 905 (M.D. Tenn. 2018) (holding that, to establish an unjust enrichment claim, a plaintiff must show that he conferred a benefit upon the defendant.").

While it is difficult to determine what work Hammervold is seeking repayment for based on his threadbare discovery responses, as a matter of law, he cannot recover for any work following the Court's order dismissing the complaint in the Underlying Case due to the statute of limitations because Beckwith did not benefit from those services. It was Hammervold's failure to timely file the complaint in the Underlying Case based on his understanding of the statute of limitations at that time that necessitated his additional work. Despite believing the complaint needed to be filed by January 22, 2016, Manookian and Hammervold failed to file the complaint in accordance with the Tennessee Rules of Civil Procedure until January 26, 2016. They attempted to argue, to no avail, that the delay was a product of the inclement weather and the state court clerk's instructions. However, rather than ensuring that the complaint was properly filed the next business day, Hammervold and Manookian waited an additional day to submit the filing fee and properly file the complaint.

While ultimately the Tennessee Court of Appeals permitted Beckwith's claim for professional negligence to survive based upon its interpretation of the tolling agreement, it made no determination regarding whether Hammervold's fax-filing of the Complaint complied with the Tennessee Rules of Civil Procedure. As a result of Hammervold's purported work following the filing of the complaint, Beckwith was in the same position as he would have been had the complaint been timely filed pursuant to the apparent understanding of the statute of limitations at

the time. Following the appeal of the state court's decision dismissing the complaint as untimely, Beckwith was left with exactly what he bargained for at the time he initially contracted with Manookian, which was the ability to pursue his claims against LBMC. Therefore, Hammervold cannot show that Beckwith received any benefit for the services that he received following the state court's dismissal of the initial complaint that was filed in the Underlying Case.

### C. Plaintiff cannot show that the fees he is seeking are reasonable.

Hammervold's request for over $250,000 of fees is unreasonable. "Liability under quantum meruit is based on a legally implied promise to pay a *reasonable amount* for goods or services received." *See Gerber v. Segal*, 2003 WL 327519, at *4 (Tenn. Ct. App.). The factors to be used as guides in determining a reasonable attorney's fee may be summarized as follows:

1. The time devoted to performing the legal service.
2. The time limitations imposed by the circumstances.
3. The novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.
4. The fee customarily charged in the locality for similar legal services.
5. The amount involved and the results obtained.
6. The experience, reputation, and ability of the lawyer performing the legal service.

*Id.*

Here, Hammervold is seeking over $250,000 "for the actual value of the services" he provided to Beckwith. (*See* Complaint at Prayer for Relief.) However, Hammervold has set forth no evidence to support this contention. Rather than providing information to support this exorbitant fee in discovery, Hammervold provided the following responses.

> 3. **Describe with specificity the damages you sustained as a result of the events alleged in your Complaint.**
>
> **ANSWER:** Plaintiff is entitled to recover a fair and reasonable fee for the value his work created and preserved for Larry Beckwith. However, a computation of damages is premature as said computation would rely, at least in part, on information yet to be obtained through discovery. As already briefed by the Parties, the value of Plaintiff's *quantum meriut* claim depends, in part, on the value of Beckwith's accounting malpractice claim against Lattimore.

> 6. Describe all work that you contend you are owed for, including the work referenced in Paragraph 103 and 104 of the Complaint. For each item identified, describe the work performed and an estimate of the number of hours of work performed.
>
> **ANSWER:** Plaintiff objects to this interrogatory as overly broad and unduly burdensome. Hammervold did not keep contemporaneous records of all time spent because he was working on a contingency fee agreement. Asking Plaintiff to recreate time entries for each component of the work he did for Beckwith would be unduly burdensome and is not justified by the demands of this case, particularly since *quantum meruit* is not necessarily based on the amount of hours devoted to the representation, but rather, the value created and/or preserved by the representation.

These responses provide no basis for Hammervold's contention that his outrageous fee request is reasonable.

Not only has Hammervold failed to set forth evidence in support of his unreasonable fee demand, but the evidence in the record supports a finding that Hammervold's fee request is unreasonable. Kevin Baltz, a Nashville attorney, was hired by Beckwith to serve as an expert in this case. As indicated by his attached expert report, Mr. Baltz concluded that at most, assuming that Hammervold was entitled to recover any fees, a reasonable fee for his work would be $4,500. This conclusion is based on Mr. Baltz's extensive experience and understanding of the Tennessee market at the time that Hammervold provided the purported services and his understanding of the legal issues of this case. Therefore, if the Court is inclined to determine that Hammervold is entitled to any compensation, Beckwith respectfully asks that this Court limit the amount that Hammervold can recover to the reasonable value set forth in Mr. Baltz's expert report. Plaintiff's deadline to designate an expert has passed and Plaintiff has not identified an expert witness or produced an expert report.

### III. Even assuming Plaintiff can establish the requisite elements of his claims, Plaintiff should be barred from recovering any fees due to his unethical conduct.

Even assuming that Hammervold can demonstrate that Beckwith reasonably understood that he would be responsible for compensating Hammervold and that Hammervold conferred a benefit upon Beckwith, which he cannot, Plaintiff should be barred from recovering fees due to his unethical conduct. It would not be unjust or inequitable to permit Beckwith to retain the benefits of Hammervold's work for several reasons: (1) as stated above, the majority of the work Hammervold is seeking repayment for work that was necessitated by Hammervold and Manookian's own malpractice, and (2) Hammervold's actions in this case violate the Rules of Professional Conduct, specifically Rule 1.5.

Aside from the Manookian Engagement Agreement, which Hammervold was not a party to, Hammervold does not allege that he had any other engagement agreement with Beckwith. In pertinent part, Rule 1.5 requires:

> (b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible **shall** be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.
>
> (c) . . . A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, *including the percentage or percentages that shall accrue to the lawyer* in the event of settlement, trial, or appeal . . .

(emphasis added). Tennessee Courts have likewise held that attorneys "are required, however, to see to it that their clients understand how the fee will be calculated and billed whether the contract is in writing or not." *Alexander v. Inman*, 903 S.W.2d 686, 694 (Tenn. Ct. App. 1995). Furthermore, courts will not enforce contracts for attorneys' fees that are contrary to public policy. *Id.* An attorney seeking to enforce a contract for attorney's fees *must* show that: "(1) the client fully

understood the contract's meaning and effect; (2) the attorney and client shared the same understanding of the contract; and (3) the terms of the contract are just and reasonable." *Berkley v. Williams*, 2020 WL 1904943, at *4 (W.D. Tenn. Apr. 17, 2020) (citing *Alexander*, 903 S.W.2d at 694).

Hammervold's actions are a clear violation of Rule 1.5(b) of the Rules of Professional Responsibility and established Tennessee caselaw. In fact, it is clear from the Complaint that it was not until April 18, 2019, that Hammervold and Manookian unilaterally made the decision that Manookian would assign the entire portion of the contingency fee to Hammervold. (D.E. 1, PageID #19, ¶ 88.) This is a clear violation of Rule 1.5's requirements regarding fee agreements. *See, e.g.*, *Hanzelik v. Bd. of Prof. Resp. of Sup. Ct.*, 380 S.W.3d 669, 680 (Tenn. 2012) (affirming the decision finding an attorney responsible for violating Rule 1.5 because of their failure to provide an engagement letter, a fee schedule, and only demanding a retainer fee payment from the client).

To the extent that Hammervold attempts to rely on a contingency fee arrangement between Hammervold and Beckwith, separate from the Manookian Engagement Agreement, there are no allegations that any such contingency arrangement was agreed to, was ever discussed, or was in writing, which would be a violation of Rule 1.5(c). *See* Tenn. R.P.C. 1.5; *see also Harris v. White*, No. M2011-00992-COA-R3CV, 2012 WL 1795086, at *5 (Tenn. Ct. App. May 16, 2012).

As a result of Hammervold's undisputed actions, his fees should be forfeited. "The relationship of attorney and client is an extremely delicate and fiduciary one, so far as the duty of the attorney toward the client is concerned. "An attorney is an officer of the courts in which he is a practitioner, and courts jealously hold him to the utmost good faith in the discharge of his duty." *Madison Tire Co., Inc. v. Weaver*, 1986 WL 12493, at *2 (Tenn. Ct. App. Nov. 7, 1986). As a

-16-

Case 3:22-cv-01053   Document 51   Filed 06/14/24   Page 16 of 19 PageID #: 281

result, "misconduct in violation of a statute or acts against public policy, or in breach of an attorney's fiduciary duty to his client, may support a complete forfeiture of fees." *Id.*

Here, Hammervold seeks to recover fees under the theories of quantum meruit and unjust enrichment. His rationale is that his contingency fee with Beckwith ended on May 6, 2019, and after the termination of this alleged agreement, he was entitled to the recovery of his fees under quantum meruit and unjust enrichment.

Hammervold was not a party to the Manookian Engagement Agreement, nor did he communicate any information to Beckwith regarding his representation of him, including his hourly rate or the scope of any representation. Despite the lack of agreement between the parties, Hammervold's Complaint seeks fees in the excess of $250,000, which his certainly not a reasonable fee. (D.E. 1, PageID #27.)

Hammervold has relied on *Miltier v. Bank of Am., N.A.*, No. E2012–00393–COA–R3–CV, 2013 WL 3282939 (Tenn. Ct. App. June 26, 2013) and *Madison Tire Co., Inc. v. Weaver*, 1986 WL 12493 (Tenn. Ct. App. Nov. 7, 1986) to support his contention that he can pursue his claims against Beckwith. Both of these cases are clearly distinguishable from the facts of this case. In those cases, the attorney seeking fees *was a clear party to the initial contingency fee agreements*, but the defendants in those cases terminated the attorney-client relationship prior to recovery so the courts permitted the attorneys to proceed under the theory of quantum meruit. The defendants in those cases were properly informed of their fee arrangements. Conversely, here, Hammervold had no such fee agreement with Beckwith, contingency or otherwise. Permitting Hammervold to now recover an exorbitant request for fees absent any fee agreement or fee conversation between Hammervold and Beckwith is contrary to the Rules of Professional Responsibility and Tennessee caselaw. This is not a case where there was an "innocent snafus, such as an oversight in drafting

-17-

that might render their fee contracts unenforceable." *White v. McBride*, 937 S.W.2d 796, 803 (Tenn. 1996). Rather, there is a complete lack of a fee agreement or understanding, which goes to the heart of the fiduciary relationship between an attorney and their client. The *White* court held that when the underlying issue goes to the heart of the fiduciary relationship and is a clear violation of the Rules of Professional Conduct, the attorney should not be permitted to rely on the theory of quantum meruit to collect fees. *Id.*

Therefore, as a matter of law, Hammervold should be barred from any recovery.

## CONCLUSION

Based on the foregoing, Beckwith's Motion for Summary Judgment should be granted. Hammervold has failed to set forth facts supporting essential elements of his claim and regardless, the undisputed material facts show that Beckwith did not reasonably understand that he would be responsible for compensating Hammervold and that Hammervold conferred no benefit upon Beckwith. Moreover, as a matter of law, Hammervold should be barred from recovering any fee as a result of his malpractice and misfeasance under the Rules of Professional Responsibility.

Respectfully submitted,

*/s/ Bethany M. Vanhooser*
Bethany Vanhooser, BPR # 038594
SPENCER FANE LLP
511 Union Street, Suite 1000
Nashville, TN 37219
bvanhooser@spencerfane.com

Jamie Cotter, *admitted pro hac vice*
SPENCER FANE LLP
1700 Lincoln Street, Suite 2000
Denver, CO 80203
jcotter@spencerfane.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a correct and true copy of the foregoing document was served on the following individuals via the Court's ECF system on June 14, 2024:

Mark Hammervold
155 S. Lawndale Ave
Elmhurt, IL  60126
mark@hammervoldlaw.com

/s/ Bethany M. Vanhooser