**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **Mark Hammervold,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **NO. 3:22-CV-01053** |
| **Larry Beckwith,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Rule 56.03 of the Federal Rules of Civil Procedure, Defendant Larry Beckwith ("Beckwith" or "Defendant") submits the following Statement of Undisputed Material Facts in support of his Motion for Summary Judgment.

1. On January 18, 2016, Beckwith entered into an engagement agreement with Cummings and Manookian ("Manookian Engagement Agreement"). (Complaint, Exhibit B, D.E. 1-2, reattached hereto as **Exhibit 1**.)

**RESPONSE:**

2. Mark Hammervold is not a member of the Cummings and Manookian law firm. (Ex. 1 (Complaint, Exhibit B, D.E. 1-2).)

**RESPONSE:**

3. The Manookian Engagement Agreement states:

> Additionally, I occasionally split my portion of contingency fees with Mark Hammervold when I have him assist in a case. I may have him assist in this case, and if so, you agree to my sharing of my fee with him. All compensation to Mr. Hammervold is out of my already agreed upon fee and does not cost you anything additional.

> You have the right to change attorneys to another attorney or firm at any time by sending us a letter to that effect. This right to "discharge" this firm as your representative requires that you remain responsible for all costs and expenses incurred prior to receipt of your letter. If you terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed, based upon the amount of time required, the complexity of the matter, the time frame within which the work was performed, our experience, ability, reputation, the responsibility involved and the results obtained.
>
> We may choose to withdraw from representing you and request, in writing, that you obtain another attorney or firm to represent you. A "withdrawal" by this firm does not relieve you of the responsibility to pay advanced costs.

(Ex. 1 (Complaint, Exhibit B, D.E. 1-2).)

**RESPONSE:**

4. The Complaint states that "the split of the contingent attorney fee would be determined later among the attorneys and approved by the client." (Complaint, D.E. 1, Page ID #3, ¶ 11.)

**RESPONSE:**

5. After the execution of the Manookian Engagement Agreement, on the evening of January 21, 2016, Brian Manookian emailed Mark Hammervold and informed him that he would need assistance drafting the Complaint. (**Exhibit 2** hereto.)

**RESPONSE:**

6. On January 22, 2016, Brian Manookian and Mark Hammervold faxed a complaint to the court in the state court case in Williamson County, TN Circuit Court, captioned *Larry Beckwith v. Lattimore Black, Morgan & Cain P.C.*, No. 2016-40 (hereinafter "State Court Complaint"). (Complaint, D.E. 1, Page ID #3, ¶ 34; **Exhibit 3** hereto.)

**RESPONSE:**

7. The Williamson County Circuit Court ultimately did not accept the State Court Complaint as being filed until January 26, 2016. (**Exhibit 4** (filing confirmation); **Exhibit 5** (state court order on motion to dismiss and for summary judgment).)

**RESPONSE:**

8. The filing fee for the State Court Complaint was paid on January 26, 2016. (Ex. 4; Ex. 5 at pg. 13.)

**RESPONSE:**

9. A copy of the State Court Complaint with an original signature was delivered on January 26, 2016. (Ex. 5 at pg. 13.)

**RESPONSE:**

10. After the State Court Complaint was filed, the defendant filed a motion for summary judgment based, in part, on the statute of limitations for Beckwith's breach of confidentiality claim, which was believed to run on January 22, 2016. (**Exhibit 6** hereto (Motion for Summary Judgment).)

11. The Williamson County Circuit Court found that under Tennessee Rule of Civil Procedure 5A.02, all court documents except complaints can be filed by facsimile. (Ex. 5 at pg. 14.)

**RESPONSE:**

12. The Williamson County Circuit Court found that "the Court cannot consider the Complaint as having been filed prior to the point at which Plaintiffs filed a signed hard copy of their Complaint and paid the filling fee associated therewith." (Ex. 5 at pg. 15.)

**RESPONSE:**

13. The Williamson County Circuit Court's August 5, 2016 Order dismissed the State Court Complaint finding that it was not timely filed. (Complaint, D.E. 1, Page ID #3, ¶ 34; Ex. 5.)

**RESPONSE:**

14. In the August 5, 2016 Order, the Williamson County Circuit Court stated that even assuming that the Court's partial closure on January 22, 2016 provided additional time to file the State Court Complaint, pursuant to the Tennessee Rules of Civil Procedure, the deadline then moved to the next business day that the court was open, which was January 25, 2016. (Ex. 5 at pg. 15.)

**RESPONSE:**

15. On or about September 1, 2016, after being unable to reach Brian Manookian and not receiving an update regarding the status of the case, Larry Beckwith called the Williamson County Circuit Court and found out that an order dismissing the State Court Complaint had been entered. (**Exhibit 7** hereto.)

**RESPONSE:**

16. A Motion to Amend the Williamson County Circuit Court's order dismissing the State Court Complaint was ultimately filed and it was denied because "Mr. Beckwith failed to timely file his lawsuit." (**Exhibit 8** hereto at pg. 9.)

**RESPONSE:**

17. Thereafter, Brian Manookian and Mark Hammervold pursued an appeal of Williamson County Circuit Court's order dismissing the State Court Complaint. (**Exhibit 9** hereto.)

**RESPONSE:**

18. During the appeal, on August 18, 2017, Brian Manookian emailed Mark Hammervold stating "[l]et's discuss whether continuing any relationship with these individuals makes sense under the circumstances." (Complaint, D.E. 1, Page ID #3, ¶ 71.)

**RESPONSE:**

19. On August 19, 2017, Manookian told Beckwith: "Let's talk next week about my role going forward. I intend to pursue the appeal in this matter, but I will withdraw at its conclusion, as is my prerogative under our engagement letter. You need to arrange for Bill or Harold or someone else to take my place." (Complaint, D.E. 1, Page ID #3, ¶ 72.)

**RESPONSE:**

20. On or about September 21, 2018, Manookian was suspended from the practice of law. (*See* Tennessee Board of Professional Responsibility, Attorney Details, https://www.tbpr.org/attorneys/026455.)

**RESPONSE:**

21. Mark Hammervold continued working on the appeal of Williamson County Circuit Court's order dismissing the State Court Complaint. (Complaint, D.E. 1, Page ID#12, ¶ 61.)

**RESPONSE:**

22. Mark Hammervold did not enter into any engagement letter directly with Beckwith. (*See* Larry Beckwith Declaration, attached hereto as **Exhibit 10** at ¶ 2.)

**RESPONSE:**

23. Prior to seeking payment for services in 2019, Mark Hammervold did not discuss the terms of his representation with Larry Beckwith directly, including Mark Hammervold's hourly rate, that he expected to receive a portion of any recovery, or the amount of time he spent on the case. (*See* Ex. 10 at ¶ 4.)

**RESPONSE:**

24. Mark Hammervold never sent Larry Beckwith monthly bills. (*See* Ex. 10 at ¶ 5.)

**RESPONSE:**

25. The only engagement letter or agreement Larry Beckwith had with Brian Manookian related to the State Court Complaint and resulting case was the one dated January 16, 2016. (*See* Ex. 10 at ¶ 3.)

**RESPONSE:**

26. Based on the Manookian Engagement Agreement, it was Larry Beckwith's understanding that Mark Hammervold would solely be compensated by Brian Manookian. (*See* Ex. 10 at ¶ 7.)

**RESPONSE:**

27. Larry Beckwith also understood that Mark Hammervold was conducting the work on the appeal of the Williamson County Circuit Court order dismissing the State Court Complaint in an effort to resolve the issues that resulted from the State Court Complaint not being filed by January 22, 2016. (*See* Ex. 10 at ¶ 8.)

**RESPONSE:**

28. Aside from the Manookian Engagement Agreement, Brian Manookian and Larry Beckwith did not discuss Mark Hammervold's involvement in the state court case prior to work being performed. (Ex. 10 at ¶ 6.)

**RESPONSE:**

29. The Tennessee Court of Appeals issued its decision regarding the appeal of the Williamson County Circuit Court's order dismissing the State Court Complaint on March 21, 2019. (**Exhibit 11** hereto.; *see Beckwith v. LBMC*, *P.C.*, No. M2017-00972-COA-R3-CV (Tenn. Ct. App. Dec. 6, 2017).)

**RESPONSE:**

30. The Tennessee Court of Appeals made no determination regarding whether Mark Hammervold and Brian Manookian's filing date of the State Court Complaint should be considered January 22, 2016. (*Id.*)

**RESPONSE:**

31. On April 18, 2019, Mark Hammervold alleges that he and Brian Manookian had a call and "Manookian agreed to assign the entire portion of the contingency fee" to Hammervold. (Complaint, D.E. 1, PageID #19, ¶ 88.).

**RESPONSE:**

32. Larry Beckwith did not consent to this alleged agreement to transfer rights between Brian Manookian and Mark Hammervold. (*See* Ex. 10 at ¶ 9.)

**RESPONSE:**

33. On April 18, 2019, Mark Hammervold emailed Larry Beckwith's counsel contending that he was owed money under the Manookian Engagement Agreement. (Complaint, D.E. 1, PageID #19, ¶ 89.)

**RESPONSE:**

34. Manookian has not sought payment from Beckwith for himself for the services provided in the Underlying Case. (*See* Ex. 10 at ¶ 10.)

**RESPONSE:**

35. By emails between counsel, Hammervold was expressly notified on May 7, 2019, that Beckwith would not like to proceed with Hammervold's representation in the Underlying Case. (*Id.* ¶ 97.)

**RESPONSE:**

36. Mark Hammervold Stated the following in response to discovery requests:

(M. Hammervold Interrogatory Responses, **Exhibit 12** hereto.)

> **3. Describe with specificity the damages you sustained as a result of the events alleged in your Complaint.**
>
> **ANSWER:** Plaintiff is entitled to recover a fair and reasonable fee for the value his work created and preserved for Larry Beckwith. However, a computation of damages is premature as said computation would rely, at least in part, on information yet to be obtained through discovery. As already briefed by the Parties, the value of Plaintiff's *quantum meruit* claim depends, in part, on the value of Beckwith's accounting malpractice claim against Lattimore.
>
> **6. Describe all work that you contend you are owed for, including the work referenced in Paragraph 103 and 104 of the Complaint. For each item identified, describe the work performed and an estimate of the number of hours of work performed.**
>
> **ANSWER:** Plaintiff objects to this interrogatory as overly broad and unduly burdensome. Hammervold did not keep contemporaneous records of all time spent because he was working on a contingency fee agreement. Asking Plaintiff to recreate time entries for each component of the work he did for Beckwith would be unduly burdensome and is not justified by the demands of this case, particularly since *quantum meruit* is not necessarily based on the amount of hours devoted to the representation, but rather, the value created and/or preserved by the representation.

**RESPONSE:**

37. Kevin Baltz's, Defendant's expert witness, expert report concludes that assuming that Mark Hammervold is entitled to recover under his claims, at most he is entitled to recover $4,500. (*See* K. Baltz expert report, attached hereto as **Exhibit 13**.)

**RESPONSE:**

Respectfully Submitted,

*/s/ Bethany M. Vanhooser*
Bethany Vanhooser, BPR # 038594
SPENCER FANE LLP
511 Union Street, Suite 1000
Nashville, TN 37219
bvanhooser@spencerfane.com

Jamie Cotter, *admitted pro hac vice*
SPENCER FANE LLP
1700 Lincoln Street, Suite 2000
Denver, CO 80203
jcotter@spencerfane.com
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a correct and true copy of the foregoing document was served on the following individuals via the Court's ECF system on June 14, 2024:

Mark Hammervold
155 S. Lawndale Ave
Elmhurt, IL 60126
mark@hammervoldlaw.com

*/s/ Bethany M. Vanhooser*