IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **MARK HAMMERVOLD;** | § § § | |
| **Plaintiff** | § § | No. 3:22-CV-01053 |
| v. | § § | |
| **LARRY BECKWITH;** | § § | |
| **Defendant** | § § § | |

---

## DECLARATION OF MARK HAMMERVOLD
---

I, Mark Hammervold, do hereby certify pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the following statements are true and correct:

1. I am an adult citizen over the age of 18 years old. I am competent to testify and have personal knowledge of the facts herein.

   **a. My Professional Background and Experience:**

2. I attended Vanderbilt University Law School on academic scholarship and graduated in 2012. I previously attended Northwestern University on a merit scholarship for policy debate and graduated with honors in 2008.

3. After graduating from law school, I first practiced with the law firm of Gideon Cooper & Essary, PLC from 2012 to 2015.[1] I established my own law firm – Hammervold Law – in 2015. I also moved to Chicago, IL in the Fall of 2015.

4. I have continuously been licensed to practice law in Tennessee since 2012, in Florida since 2013 and in Illinois since 2015. I remain in good standing in all three states.

---

[1] I started working at the law firm of Gideon, Cooper & Essary, PLC during law school, and then continued practicing there as an attorney, full-time, after graduation.

1

### b. My Association with Cummings Manookian in 2015-2019:

5. After forming my own law practice in 2015, and through the time relevant to this case, I regularly associated with the law firm Cummings Manookian, PLC as co-counsel to work on certain plaintiffs' cases. For contingency fee cases, like the underlying case at issue here (Larry Beckwith v. Lattimore Black, Morgan & Cain, P.C., Williamson County, TN Circuit Court, No. 2016-40) my understanding was that the client would be informed, and would approve, that I would be working on the case as co-counsel. The client would then execute a single contingency fee agreement, which would explicitly authorize Cummings Manookian and myself to split the attorney fee. The split of the contingent attorney fee would be determined later among the attorneys, and approved by the client, based on the factors required by the applicable rules of professional responsibility, including, most importantly, the amount of time and responsibility undertaken by each of the lawyers involved in the case.

6. The specific division of the split generally could not be identified in the contingency fee agreement, at the very beginning of the case, because Tennessee Rule of Professional Conduct § 1.5(e)(1) required that "the division [be] in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation."

### c. My Representation of Larry Beckwith in *Lattimore*.

7. I represented Larry Beckwith as his attorney in a civil lawsuit involving Beckwith's highly valuable accounting malpractice claim against Lattimore Black, Morgan & Cain, P.C.

8. In January 2016, Larry Beckwith and his in-house counsel, Harold Donnelly were looking for the right counsel to represent Beckwith and his company, LBDB Holdings, LLC f/k/a Eco Energy Holdings, Inc. in an accounting malpractice lawsuit against LBMC, PC f/k/a Lattimore Black Morgan & Cain, PC.

9. At that time, Beckwith was not only represented by in-house counsel, but was an extremely sophisticated party and was very familiar with litigation. With respect to his claim against Lattimore, Beckwith had previously been represented by Jeffrey Smith of Greenberg Traurig. In 2016, Greenberg Traurig was a top tier global law firm, with hundreds of lawyers. Beckwith was an extraordinarily successful businessman. ▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰

10. On January 15, 2016 (a Friday), Larry Beckwith and his in-house counsel, Harold Donnelly, met with Brian Manookian in person and discussed retaining him to represent Beckwith in the case against Lattimore on a contingency fee. Brian Manookian relayed to me that he told Beckwith and Donnelly that he needed me to help with the representation, and that they Larry approved my involvement as co-counsel in the case.

11. I spoke with Brian Manookian after the meeting, on either January 15, 2016 or January 16, 2016. He relayed to me that Beckwith and Manookian had verbally agreed on a contingency fee and to my involvement as co-counsel, but the exact structure of the fee was still being worked out and would be reduced to a written agreement. Manookian also relayed to me that ▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰

12. ▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰▰

13. On January 16, 2016 (a Saturday), Brian Manookian sent a draft of the contingency fee agreement to Beckwith and Harold Donnelly. A copy is attached as **Exhibit A**. The draft agreement indicated that "All work on this matter will be done by Brian Manookian or Mark Hammervold" and that "you agree to my sharing of my fee with [Mark Hammervold]." The draft contingency fee agreement left the scale of the contingency agreement blank.

14. On January 18, 2016 (the following Monday), Beckwith agreed on the scale of the contingency fee agreement and it was hand-written into the contingency fee agreement. Beckwith then executed the agreement. This final copy of the contingency fee agreement was previously filed as Exhibit B to the Complaint. Dkt. 1-2.

15. I spoke with Brian Manookian on the morning of January 21, 2016. We again discussed the case and the drafting of Beckwith's complaint against Lattimore. We agreed that I would draft the complaint and he would get it filed. I then worked all day on Beckwith's complaint and sent a draft to Brian Manookian at 8:17 pm on January 21, 2016.

16. On January 22, 2016, Brian Manookian called me around 9 am. He said that the weather conditions were so bad in Nashville that he could not make it to the Williamson County courthouse to file the complaint in person. He said that the clerk's office was also closing soon, but that the clerk had given him permission to fax-file the complaint. Brian Manookian asked me to do so and I did so. The clerk then time-stamped the complaint as filed at 9:34 am, officially confirming that it was filed as of that time. After fax-filing the complaint, I called the clerk and they confirmed that they received the complaint, file-stamped the complaint and that the complaint was considered filed.

17. Larry Beckwith's complaint against Lattimore Black was filed in Williamson County Circuit Court on January 22, 2016.

4

18. After preparing the complaint and getting it filed I continued working on the case. As just one example, ████████████████████████████████████████████ ████████████████████████

19. On February 19, 2016, Lattimore filed a motion to dismiss and a motion for summary judgment. In those motions, Lattimore sought dismissal and/or summary judgment of Beckwith's accounting malpractice claim based on (1) a claimed deficiency of service and (2) an argument that the claim was time-barred because it was not properly "commenced" under Tenn. R. Civ. P. 3 until January 26, 2016.[2] Lattimore argued that the Tolling Agreement imposed a contractual filing deadline of January 22, 2016, and that Beckwith had missed that deadline due to the unusual circumstances by which the complaint was filed due to the inclement weather. Both of those arguments were meritless, both factually and legally.

20. Brian Manookian and I drafted and filed responses to Lattimore's dispositive motions.

21. With respect to the service of process issue, Lattimore withdrew its argument for dismissal after reviewing Beckwith's response, in advance of the motion hearing.

22. Brian Manookian then appeared on Beckwith's behalf for the hearing on the motion to dismiss.

23. On August 5, 2016, Judge Michael Binkley granted Lattimore's motion for summary judgment. Judge Binkley erroneously adopted Lattimore's argument that Beckwith's claim against Lattimore was time-barred because it was not "filed" on January 22, 2016. Judge Binkley also granted summary judgment against Beckwith's claim on the basis that Lattimore's

---

[2] Lattimore's motion also contained other arguments and bases for dismissal, but they are not material to this lawsuit. For example, Lattimore correctly argued that LBDB's claims became time-barred on July 28, 2015 because LBDB was not a party to the Tolling Agreement.

duty of confidentiality was owed only to LBDB, and not to Beckwith – even though Lattimore did not argue this and it was legally and factually wrong.

24. After Judge Binkley's August 5, 2016 order, I took over near exclusive responsibility in representing Beckwith.

25. I prepared and filed a motion to alter or amend judgment on September 2, 2016. The motion sought to correct Judge Binkley's errors in granting summary judgment on Beckwith's accounting malpractice claim.

26. I then traveled from Chicago to Williamson County, Tennessee on November 17, 2016 and appeared on Beckwith's behalf during the hearing on Beckwith's motion to alter or amend.

27. At the hearing on November 17, 2016, Judge Binkley was highly complimentary of me and my oral argument on Beckwith's behalf, but indicated that he was likely going to rule against Beckwith's motion to alter or amend in a forthcoming written order. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

29. ███████████████████████████████████████
███████████████████████████████████████
████████████████

30. On April 17, 2017, Judge Binkley entered an order granting in part and denying in part Beckwith's motion to alter or amend. Judge Binkley vacated the portion of his order granting summary judgment on the basis that Beckwith was not an intended third-party beneficiary. But, Judge Binkley denied the motion to alter or amend as to the statute of limitations issue.

31. ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

32. ███████████████████████████████████████
████████████████████████████

33. ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████████████

34. Shortly after that call, I prepared a notice of appeal and sent it by certified mail for filing. I thereafter confirmed that the notice of appeal was received and timely filed on May 11, 2017 before the deadline. I then worked with Beckwith and his in-house counsel on preparing and filing the required cost bond.

35. I represented Beckwith throughout the appeal of *Beckwith v. LBMC, P.C.*, No. M2017-00972-COA-R3-CV.

7

36. On June 9, 2017, I filed a notice that I should be designated as lead counsel in the appeal. I also prepared and filed a notice that no additional transcripts will be filed per Rule 24(d). I provided copies of both notices to Hankins, Donnelly and Beckwith.



8







48. I finished and filed the appellant brief on August 21, 2017, and sent a copy to Hankins, Donnelly, and Beckwith.

49. Lattimore filed their appellee brief on September 20, 2017. Upon receiving Lattimore's brief, I initially expected that I would prepare a reply brief, and so I filed an unopposed motion for an extension of time to do so (to accommodate a previously-planned trip to China), which was granted.

50. On September 25, 2017, I provided Beckwith, Donnelly and Hankins with a copy of Lattimore's appellee brief and the order granting the extension.

11

[redacted]

52. On December 6, 2017, I traveled from Chicago to Nashville for the oral argument before the Tennessee Court of Appeals.

[redacted]

54. The appeal remained pending for over a year after oral argument, but I still spent additional time working on the case during this period. In addition to responding to Beckwith's requests for updates, I received and reviewed serial notices of supplemental authority filed by Lattimore's counsel. I also spent hours reviewing the cases cited by Lattimore, as well as searching for potential supplemental authorities worthy of filing a Rule 27(d) notice on Beckwith's behalf.

55. On March 21, 2019, the Court of Appeals issued an order reversing summary judgment, and remanding the case back to the trial court level to proceed. It was an unequivocal win for Beckwith.

[redacted]



61. The same day, I discussed the call with Manookian. Since I had done nearly all of the work representing Beckwith, had spent hundreds of hours working on the case, and had singlehanded achieved such a great result for the client through the appeal, Manookian agreed to assign the entire portion of the contingency fee to me.

62. On April 26, 2019, I had not heard back from Koju about whether Beckwith would be terminating the attorney-client agreement or not, and sent a follow-up email:

> Stacey,
>
> I have not heard back from you. Can you please respond by letting me know what Larry wants to do, including whether he is terminating me from representing him. I need to know the latter ASAP.
>
> Thanks,

13

Mark

63. On April 29, 2019, Koju responded: "I will try to resolve this by tomorrow." After I followed up again on April 30, 2019, Koju responded: "I will send you an email by tomorrow." After I followed up again on May 1, 2019, Koju responded "Just a quick note to let you know that I am offsite at a client's board meeting through tomorrow afternoon and not ignoring your email. If I can, I will get something to you tonight, and if I cannot then certainly Friday as soon as the meeting ends."

64. After I followed up again on May 6, 2019, Koju finally provided a substantive response later that day, stating: "Mr. Beckwith would not like to proceed with your representation of him in the LBMC Litigation."

65. On May 7, 2019, Koju again instructed me: "While we notified you yesterday that Mr. Beckwith terminated your representation of him, I want to be clear that his decision to terminate your services is not part of an offer to compromise/Rule 408. Therefore, I am writing this confirmation of the termination of your representation of Mr. Beckwith via separate email." Koju thereafter instructed me to prepare and file a motion to withdraw.

66. I thereafter filed a motion to withdraw on May 24, 2019 with the Tennessee Court of Appeals, and another motion to withdraw with the Tennessee Supreme Court on July 25, 2019 (after Lattimore filed a petition for permission to appeal to the Supreme Court).



14

69. Based on the contingency fee agreement, I reasonably expected to be compensated representing Beckwith in the Lattimore case.

70. Since I was working based on the contingency fee agreement, I did not keep track of my hours. However, I estimate that I would have spent several hundred hours representing Beckwith in *Lattimore* from January 16, 2016 to July 25, 2019.

71. My representation of Beckwith created significant value for Beckwith because I ensured that Beckwith's complaint was timely filed, served, and preserved, even though Judge Binkley erroneously dismissed the complaint. I also obtained reversal of a legally-incorrect order granting summary judgment through a successful appeal.

72. Beckwith's Counsel in this case also represents Beckwith against Lattimore. They have informed me that Beckwith's case remains ongoing and that Beckwith has not yet obtained a settlement or judgment against Lattimore.

73. Beckwith has refused to acknowledge that I will be entitled to any portion of an eventual recovery against Lattimore.

74. I did not commit any malpractice in representing Beckwith in the *Lattimore* case.

**Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.**

**Executed this 5th day of July, 2024.**

**s/Mark Hammervold**
**Mark Hammervold**