# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **MARK HAMMERVOLD;** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | **No. 3:22-CV-01053** |
| **v.** | § | |
| | § | |
| **LARRY BECKWITH;** | § | |
| | § | |
| **Defendant** | § | |
| | § | |

## <u>PLAINTIFF MARK HAMMERVOLD'S RESPONSE IN OPPOSITION TO DEFENDANT LARRY BECKWITH'S MOTION FOR SUMMARY JUDGMENT</u>

The Plaintiff, Mark Hammervold ("Hammervold"), hereby submits this Response in Opposition to Defendant Larry Beckwith's ("Beckwith") Motion for Summary Judgment (Dkt. 51) ("MSJ").

## <u>INTRODUCTION</u>

This Court has already found that Hammervold has "clearly" presented a legally cognizable *quantum meruit* claim based on his version of the facts. Order Denying D's MTD, Dkt. 28 at 13 (the "Complaint clearly states facts sufficient to support a claim of attorney's fees under a theory of quantum meruit, and the defendant's motion is without merit."). Since Motion for Summary Judgment mostly rehashes the same flawed arguments from his Motion to Dismiss, is also "without merit," *id.*, particularly since Beckwith cannot show show any meaningful difference in the facts as alleged and as gleaned from the record evidence when viewed in the light most favorable to Hammervold.

Beckwith presents two new arguments: (1) he claims that Hammervold deserves no fee for his work in *Lattimore* because "the majority of the work Hammervold is seeking repayment for work [sic] that was necessitated by Hammervold and Manookian's own malpractice," MSJ, Dkt.

1

51, at 13; and (2) he claims that "Hammervold has set forth no evidence to support" the $250,000 *ad damnum* amount in the complaint. *Id.* at 15. Both arguments clearly fail.

Beckwith's "malpractice" affirmative defense fails for multiple reasons. First, Beckwith should be precluded from raising this affirmative defense because: (a) he waived it by failing to plead it in his Answer; (b) he should be judicially estopped from arguing that Hammervold or Manookian committed "malpractice" by failing to timely file his complaint against Lattimore, because he previously argued in *Lattimore* – successfully – that Manookian and Hammervold timely filed his complaint in that case; and (c) Beckwith conclusively admitted in his operative Answer that his Complaint against Lattimore was filed on January 22, 2016.

Second, Beckwith's "malpractice" defense fails because Hammervold did not commit any malpractice. Beckwith's complaint was timely filed and only dismissed due to judicial error. Hammervold spent hundreds of hours diligently and expertly representing Beckwith in the *Lattimore* case and Beckwith received a substantial benefit from that work because Hammervold ensured that Beckwith's complaint was timely filed and preserved, even though Judge Binkley erroneously dismissed the complaint. Equity requires Hammervold receive a reasonable fee for that work on Beckwith's behalf in *Lattimore*.

Beckwith's summary judgment argument contesting Hammervold's *ad damnum* also has no merit. First, an *ad damnum* is irrelevant to the amount Hammervold can request or this Court can award. Second, Hammervold has established the *existence* of damages and has no burden to present evidence regarding the proper *amount* of damages at the summary judgment stage. It is an improper basis for summary judgment. Third, this Court will have significant discretion to determine what fee is "reasonable" based on the totality of circumstances and upon properly weighing the equities at trial. Beckwith's argument that this Court must adopt the opinion of his

2

retained witness – that Hammervold's fee should be limited to $4,500 – fails for the same reasons. This Court should also decline to consider Mr. Baltz's unsworn expert report because it is inadmissible and for the reasons Hammervold separately briefed in his Motion to Limit the Testimony of Defendant's Retained Expert Witness Kevin Baltz (Dkt. 57).

## **FACTUAL BACKGROUND**

Plaintiff Mark Hammervold represented Defendant Larry Beckwith as his attorney in a civil lawsuit involving Beckwith's highly valuable accounting malpractice claim against Lattimore Black, Morgan & Cain, P.C. Hammervold Decl., ¶ 7 (Dkt. 62).

At the outset of the representation, Beckwith entered into a contingency fee agreement with Cummings Manookian, PLC. *See* Manookian Decl., ¶¶ 2-3 (Dkt. 60); Hammervold Decl., ¶¶ 10-14; Dkt. 1-2. That agreement made clear that Manookian and Hammervold would be sharing the responsibility of representing Beckwith and splitting the contingency fee. Dkt. 1-2 at 2-3; *see* Manookian Decl., ¶ 2. While the agreement did not specify the exact split of the fee between Manookian and Hammervold, this was because the split was to be determined based on the amount of time and responsibility undertaken by Manookian and Hammervold in connection with the representation. Hammervold Decl. ¶ 6.

Hammervold ensured that Beckwith's complaint against Lattimore was filed on January 22, 2016. *See* P's SADMF, ¶ 4 (Dkt. 64 at 13). Hammervold thereafter continued to represent Beckwith for over three years and spent hundreds of hours doing so. Hammervold Decl. ¶¶ 12, 24, 66, 70. However, Hammervold did not keep track of his time because he was working on a contingency basis. *Id.* ¶ 70.

Hammervold's representation of Beckwith created significant value for Beckwith because Hammervold ensured that Beckwith's complaint was timely filed, served, and preserved, even

though Judge Binkley erroneously dismissed the complaint. Hammervold obtained reversal of a legally-incorrect order granting summary judgment through a successful appeal. *Id.* ¶ 71. Hammervold devoted such extensive time to representing Beckwith over several years because he expected to be compensated based on the contingency fee. *Id.* ¶ 69.

In May 2019, Beckwith terminated the contingency agreement. *Id.* ¶¶ 64-66. Beckwith's case remains ongoing. *Id.* ¶ 72. Beckwith has not yet reached a settlement or obtained a judgment against Lattimore. *Id.* Beckwith has refused to acknowledge that Hammervold will be entitled to any portion of an eventual recovery against Lattimore. *Id.* at ¶ 73.

## MOTION STANDARD

When considering a motion for summary judgment, the trial court must determine whether there are "no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In doing so, the court must construe all evidence, and draw all reasonable inferences, in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

"When determining whether the evidence is sufficient, the trial court should not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury." *J.C. Wyckoff & Assoc., Inc. v. Standard Fire Ins. Co*., 936 F.2d 1474, 1487 n.19 (6th Cir. 1991).

"Where, as here, a defendant seeks summary judgment on an affirmative defense on which it will bear the ultimate burden of proof at trial, the defendant must satisfy a demanding standard." *Cline v. Dart Transit Co.*, 2023 U.S. App. LEXIS 9521, *10 (6th Cir. Apr. 19, 2023). "Under these

4

circumstances, summary judgment is proper only if the record shows that the defendant established the defense so clearly that no rational jury could have found to the contrary." *Id.* at *10-11.

Summary judgment is generally inappropriate for claims involving a request for a reasonable attorney fee based on quantum meruit. *See Williams v. Hirsch*, 2013 Tenn. App. LEXIS 608, *23-26 (Tenn. Ct. App. Sept. 13, 2013).

## ARGUMENT

This Court should deny Beckwith's Motion for Summary Judgment because (I) Hammervold has produced evidence supporting each required element of his *quantum meruit* claim, (II) this Court should determine the amount of Hammervold's reasonable fee" after trial, not through summary judgment briefing, (III) Beckwith's "malpractice" affirmative defense is improper and meritless, and (IV) Beckwith's forfeiture affirmative defense is groundless.

### I. Evidence Supports Each Element of Hammervold's *Quantum Meruit* Claim.

There are five required elements for a *quantum meruit* claim: (1) no existing or enforceable contract; (2) Plaintiff provided valuable services; (3) Defendant received or benefitted from the services; (4) The Parties understood that the Plaintiff expected to be compensated for the services; and (5) it would be unjust for the Defendant to benefit from the Plaintiff's provision of services without paying for them. Dkt. 28 at 11 (citing *Swafford v. Harris*, 967 S.W.2d 319, 324 (Tenn. 1998)); *see* Dkt. 51 at 8-9 (conceding same). Beckwith does not dispute elements #1 or #3. MSJ, Dkt. 51, at 9.

Beckwith argues that Hammervold cannot establish elements #2, #4, and #5, but Beckwith is wrong for the same reasons this Court articulated when it denied Beckwith's motion to dismiss. *See* Dkt. 28 at 12 (the "Hammervold clearly alleged facts to support all of the necessary elements of a quantum meruit claim.").

5

### a. Hammervold Provided Valuable Services to Beckwith (#2).

This Court previously recognized that "Hammervold clearly alleges that he provided valuable legal services to Beckwith over the course of several years and that Beckwith knowingly received and benefitted from those services." Dkt. 28 at 12. The same finding is supported by the record evidence.

Hammervold spent hundreds of hours – over more than three years – representing Beckwith in the *Lattimore* case. Hammervold Decl. ¶ 70. Beckwith admits that Hammervold performed significant work for his benefit in *Lattimore*, including taking near-exclusive responsibility for the case for almost three years, from August 5, 2016[1] until July 25, 2019. Answer, Dkt. 34, ¶¶ 48, 62, 98. Beckwith also admits concrete examples of significant work performed by Hammervold, including Hammervold's efforts in preparing and filing a motion to alter/amend (which was ultimately granted in part), *id.* ¶ 49, traveling to Tennessee and appearing for the hearing on that motion, *id.* ¶ 50, serving as lead counsel for Beckwith in the successful appeal, *id.* at ¶ 62, preparing and filing the appellant brief on Beckwith's behalf *id.* at ¶ 74, and preparing for and traveling to Tennessee for oral argument in the appeal. *Id.* at ¶ 79. Hammervold's representation of Beckwith in Lattimore created significant value for Beckwith because he ensured that Beckwith's complaint was timely filed, served, and preserved. Hammervold Decl. ¶ 74.

Beckwith does not confront Hammervold's proof on this element. MSJ at 11-13. And Beckwith admits he "received the goods and services" Hammervold provided. *Id.* at 8-9 (not disputing element #3 of Hammervold's *quantum meruit* claim). Instead, Beckwith only argues that Hammervold's services were not "valuable" because they were necessitated by Hammervold's

---

[1] Hammervold also performed significant work before August 2016. *See* Hammervold Decl. ¶¶ 12, 15, 18. Beckwith's retained expert estimates that Hammervold would have spent eighteen (18) hours working on the case before January 22, 2016. Dkt. 57-1.

malpractice. *See id.* at 13. But Beckwith is precluded from raising this affirmative defense and it is meritless. *See infra* § II.

###### b. The Parties Understood that Hammervold Expected to be Compensated for the Services that He Provided for Beckwith (#4).

This Court previously found that "[b]ased on the existence of the contingency fee arrangement and Beckwith's clear understanding that Hammervold, as an associate of Manookian's, was functioning as one of his attorneys, Beckwith knew or reasonably should have known that Hammervold expected to be compensated for his services." Dkt. 28 at 12. Here again, the evidence supports the same finding.

Beckwith entered into a contingency fee agreement with Cummings Manookian, which expressly indicated that Hammervold would be working on the case, and that a portion of the contingency fee would be split with Hammervold. *See* Dkt. 1-2. During the representation, Beckwith clearly understood that Hammervold was functioning as one of his attorneys. *See e.g.,* Dkt. 1-2 at 2 (Beckwith agreeing "All work on this matter will be done by Brian Manookian or Mark Hammervold."); Manookian Decl. ¶ 2; *see also e.g.,* Hammervold Decl. ¶¶ 33, 37, 40, 46, 53, 64. Beckwith even directly and affirmatively instructed Hammervold to perform on his behalf. *See e.g.,* Hammervold Decl. ¶¶ 32, 37-40, 42, 46, 53. Beckwith knew or should have known that Hammervold expected to be compensated. *Id.* ¶ 69.

It is also implausible that Beckwith thought that Hammervold was representing him *pro bono* because Beckwith's net worth exceeded ███████ and he was seeking over ███████ in damages in *Lattimore*. Hammervold Decl. ¶¶ 9, 67-68, Ex. B thereto.

Beckwith does not dispute that Hammervold expected to be compensated, but rather, claims that Hammervold only could have expected to be compensated *indirectly*, from Manookian (upon Beckwith paying the contingency fee to Manookian). *See* D's SUMF (Dkt. 52), ¶ 26.

7

Essentially, Beckwith is repeating his previous argument that Hammervold did not have a valid contractual right to recover under the contingency agreement based on a lack of privity. *Compare* MSJ at 10-11 *with* MTD (Dkt. 22) at 6-8. This argument has no bearing on Hammervold's entitlement to recover a *quantum meruit* fee for multiple reasons.

First, before Beckwith terminated the contingency agreement, Hammervold had the enforceable legal right, and reasonable expectation, of collecting a fee based on the Manookian contingency agreement – even as a non-party – because he was an intended third-party beneficiary. *See* Dkt. 1-2; *Am. Computer Tech., Inc. v. Hardwick*, 274 Ga. App. 62, 65 (2005) ("Here, the original contract plainly shows on its face that Hardwick was intended to receive a portion of the contingency fee. He is therefore entitled to bring an action on the contract as a third-party beneficiary."); *First Tenn. Bank Nat'l Ass'n v. Thoroughbred Motor Cars*, 932 S.W.2d 928, 930 (Tenn. Ct. App. 1996) (an intended third-party beneficiary has standing to recover on a contract).

Second, even if one or more of Beckwith's various technical points challenging Hammervold's right to recover under the contingency fee agreement were correct (they are not), this would still be irrelevant because a *quantum meruit* claim does not require that a legally binding and enforceable contract to have *ever* existed. Indeed, courts have routinely approved *quantum meruit* claims based on the circumstances Beckwith claims: where the attorney worked based on a contingency fee agreement that was later found to be unenforceable as a contract. *See e.g., Cummings v. Patterson,* 59 Tenn. App. 536, 541 (Tenn. Ct. App. 1968) (affirming trial court's finding that an attorney was entitled to quantum meruit compensation when the initial contingency fee contract was found to be void and unenforceable); *Dillard Constr., Inc. v. Havron Contr. Corp.,* 2010 Tenn. App. LEXIS 732, *20-21 (Tenn. Ct. App. Nov. 23, 2010) (affirming judgment in favor of plaintiff who performed work on defendant's behalf where parties never formed binding

8

contract); *Seiden Law Grp., P.C. v. Segal,* 2021 IL App (1st) 200877, *P24 (Ill. App. 1st 2021)
(plaintiff attorney was entitled to recover based on quantum meruit even when contingency fee
agreement was initially invalid because it failed to set the fee percentage).[2]

Beckwith also appears to argue that it would be unfair for Hammervold to receive a
reasonable fee based on *quantum meruit* because the engagement agreement did not discuss "what
rate he would charge, what percentage of any judgment or settlement he would receive, or that
amounts would be due and owing in the event the event he stopped representing Beckwith," MSJ
at 10. But Beckwith expressly agreed in the contingency fee agreement that if he terminated that
agreement his attorneys would be entitled to a "reasonable fee for the work we have performed,
based upon the amount of time required, the complexity of the matter, the time frame within which
the work was performed, our experience, ability, reputation, the responsibility involved and the
results obtained." Dkt. 1-2 at 4. In other words, based on *quantum meruit*.

### c. It Would be Unjust for Beckwith to Benefit from Hammervold's Representation of Him in the Lattimore Case Without Paying a Reasonable Fee (#5).

This Court previously determined that "the circumstances alleged by Hammervold
demonstrate that it would be unjust for Beckwith to retain the benefit of his services – in the form
of a viable and valuable claim against Lattimore – without paying for them." Dkt. 28 at 12. The
same finding is supported by the record evidence.

"[C]ourts permit attorneys to recover a reasonable fee under a quantum meruit theory when
a contingency fee agreement is terminated prior to resolution of the proceeding to which it
pertains." Dkt. 278 at 11; *see also Adams v. Mellen,* 618 S.W.2d 485, 488 (Tenn. Ct. App. 1981)
(noting this is "well settled in Tennessee"). That is precisely what occurred here.

---

[2] Beckwith cites no authority otherwise, *see* MSJ at 9-11, even though Hammervold identified these same authorities
when Beckwith previously raised the same flawed argument in his Motion to Dismiss.

9

All parties expected Beckwith to pay Manookian and Hammervold pursuant to a contingency fee agreement until Beckwith terminated their representation and that agreement in 2019. Dkt. 1-2; Manookian Decl., ¶¶ 2-3. While Beckwith had the right to terminate Hammervold's representation and the contingency fee agreement, Hammervold now has the right to seek reasonable compensation based on the benefit he conferred to Beckwith through the hundreds of hours he spent working on Beckwith's behalf over three plus years. Hammervold Decl. ¶¶ 70-71; *see* Dkt. 28 at 11; *Adams,* 618 S.W.2d at 488.

Beckwith only attempts to challenge this element based on his "malpractice" defense, MSJ at 11-13, but he is precluded from raising that defense and it has no merit. *See infra* § II.

## II.  Beckwith's Attempt to Raise a Legal Malpractice Affirmative Defense is Improper and Meritless.

Beckwith claims that Hammervold committed "malpractice" by failing to timely file his complaint against Lattimore, and therefore, Hammervold's work provided almost no benefit to him. MSJ at 4, 12-13. Beckwith should be precluded from raising this affirmative defense, but in any event, it has no merit.

### A.  Beckwith Should be Precluded from Raising his "Malpractice" Defense based on the Premise that his Complaint Against Lattimore was Not Timely Filed.

Beckwith should be precluded from arguing that Hammervold committed "malpractice" or should receive no fee based on a purported failure to timely file the complaint in *Lattimore* for three separate reasons: (i) it is contrary to a judicial admission in his answer; (ii) he failed to plead this affirmative defense; and (iii) he should be estopped by successfully taking the contrary position in *Lattimore*.

10

i.       **Beckwith Did Not Raise his Malpractice Defense in his Answer.**

Beckwith waived any "malpractice" defense by failing to raise it in his Answer. He should not be permitted to raise it for the first time after the deadlines for amending pleadings, disclosing experts, and completing discovery have all passed.

A defendant must plead all affirmative defenses in their answer. Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense"). If an affirmative defense is not pled in the answer, it is waived. *See Richardson v. United States,* 2014 U.S. Dist. LEXIS 124005, *14 (M.D. Tenn. Sept. 5, 2014) ("Failure to plead an affirmative defense in the first responsive pleading to a complaint generally results in a waiver of that defense.") (citing *Horton v. Potter*, 369 F.3d 906, 912 (6th Cir. 2004)).

"Legal malpractice" is an affirmative defense to *quantum meruit* that must be pleaded in a defendant's answer. *See*; *Exact Software v. Infocon Sys*., 2011 U.S. Dist. LEXIS 66462 (N.D. Ohio Jun. 22, 2011) ("A client seeking to mitigate liability for the payment of attorneys' fees on a quantum meruit basis may interpose affirmative defenses to the action to recover fees, including . . . malpractice or misfeasance committed by the attorney in representing the client.") (quoting 16 Causes of Action 85 (2007)).

Here, Beckwith did not plead any legal malpractice affirmative defense in his Answer, *see* Dkt. 34 at pp. 11-12 (listing affirmative defenses, but not legal malpractice). Beckwith not only failed to plead any malpractice defense, but even affirmatively admitted that his complaint against Lattimore was filed on January 22, 2016. *See id.* at ¶ 37.

Beckwith should not be permitted to raise an affirmative defense for the first time after the deadlines to amend pleadings, disclose experts, and for discovery have all passed. That would be

11

highly prejudicial to Hammervold, who had a right to rely on Beckwith's Answer, as to Beckwith's factual admissions and to identify any defenses Beckwith would raise.

### ii. Beckwith Concedes his Complaint was Filed on January 22, 2016 in his Operative Answer. He Should be Precluded from Arguing Otherwise.

Beckwith concedes in his operative answer that his Complaint against Lattimore was filed on January 22, 2016. Answer, Dkt. 34, ¶ 37 ("Admitted upon information and belief."); *see* Compl., Dkt. 1, ¶ 37 ("Beckwith's complaint against Lattimore was filed on January 22, 2016 at 9:34 am, as reflected by the Clerk's official timestamp.").

Beckwith's judicial admission in his answer that his complaint against Lattimore was filed on January 22, 2016 is binding. *See Brown v. Tennessee Gas Pipeline Co.,* 623 F.2d 450, 454 (6th Cir. 1980) ("admissions in the pleadings are generally binding on the parties and the Court."). The admission "eliminate[s] the need for evidence on the subject matter of the admission, as admitted facts are no longer at issue." *Ferguson v. Neighborhood Housing Services, Inc.,* 780 F.2d 549, 550-551 (6th Cir. 1986); *see also Id.* at 551 ("Once made, the subject matter of the admission should not be reopened in the absence of a showing of exceptional circumstances."); *Hughes v. Vanderbilt Univ.,* 215 F.3d 543, 549 (6th Cir. 2000) ("[Parties] are bound by admissions in their pleadings, and a party cannot create a factual issue by subsequently filing a conflicting affidavit.").

Based on Beckwith's admission that his complaint against Lattimore was filed on January 22, 2016, he should be precluded from raising a malpractice defense based on contrary facts. *See* MSJ at 12 ("Manookian and Hammervold failed to file the complaint in accordance with the Tennessee Rules of Civil Procedure until January 26, 2016.").

Beckwith has never sought leave to amend his Answer, and the deadline to amend pleadings (along with the discovery deadline) has long passed. *See* Dkt. 42 (September 15, 2023 deadline for motions to amend and February 29, 2024 deadline for completion of fact discovery).

12

Beckwith cannot show any "exceptional circumstances" to justify withdrawing his admission that his complaint was filed on January 22, 2016. In fact, Beckwith has consistently maintained that his complaint was timely and appropriately filed on January 22, 2016 for over *eight* years. *See e.g.,* Dkt. 57-3 at 8 (April 18, 2016) ("the Complaint was filed on January 22, 2016."); Dkt. 57-4 at 8 (August 21, 2017) ("The Plaintiffs filed this action against Lattimore in Williamson County Circuit Court on January 22, 2016 at 9:34 am.").[3]

### iii. Beckwith Should be Judicially Estopped from Arguing – Contrary to his Successful Position in Lattimore – that his Complaint was Timely Filed.

Beckwith should also be judicially estopped from arguing that Hammervold did not timely file his complaint in the *Lattimore* case because he previously argued that his complaint had been timely filed – and the Tennessee Court of Appeals accepted that argument. *See* Dkt. 57 at 12-14 (Hammervold incorporates this argument by reference from his Motion to Limit the Testimony of Kevin Baltz).

### B. Beckwith's Legal Malpractice Affirmative Defense has No Merit.

Beckwith's malpractice defense has no merit for two reasons. First, Beckwith's malpractice defense is based on the indisputably false premise that his complaint against Lattimore was not timely filed. As Beckwith admits in his operative Answer, Answer, ¶ 37, Beckwith's complaint against Lattimore was timely filed on January 22, 2016. P's SDMF, ¶ XX (Dkt. 64); *see Beckwith v. LBMC, P.C.*, 2019 Tenn. App. LEXIS 138, *15 (Tenn. Ct. App. Mar. 21, 2019) (conclusively finding that Beckwith's complaint was timely filed); *see also* P's Resp. to D's SUMF, ¶ 7. The dismissal of Beckwith's complaint was the result of Judge Binkley's legal error, not any malpractice by Hammervold. *See Beckwith*, 2019 Tenn. App. LEXIS 138, *15.

---

[3] While Hammervold signed the latter pleading, Beckwith and his separate in-house counsel were granularly involved with its drafting and approved the pleading. *See* Hammervold Decl. ¶¶ 39-42.

Second, Beckwith has the burden to prove his malpractice defense with expert evidence, but he has not – and cannot – do so. To assert legal malpractice, "expert testimony is required to establish negligence and proximate cause unless the alleged malpractice is within the common knowledge of laymen." *Dorrough v. Tarpy*, 260 Fed. Appx. 862, 863 (6th Cir. 2008) (applying Tennessee law). Here, expert testimony would be required for this defense because the issue of whether there was any malpractice would require analysis of (1) the correct filing deadline under the tolling agreement between Beckwith and Lattimore; (2) the issue of whether and when the complaint should be deemed filed under Tenn. R. Civ. P. 3, based on the intersection of the rules and procedures for filing, the dangerous weather conditions on January 22, 2016, and the special permission granted by the Williamson County Circuit Court clerk to fax file. *See* Dkt. 57-4 at 33-36.

Here, Beckwith has not – and cannot – show that Hammervold acted negligently, or that his negligence was the proximate cause of some harm to Beckwith, through expert proof. Beckwith's only disclosed expert is Mr. Baltz, who does not offer any such opinions in his report. *See* Dkt. 57-1. Even if Mr. Baltz had offered such opinions in his report (he does not), his unsworn report is inadmissible, *see Sigler v. Am. Honda Motor Co.,* 532 F.3d 469, 480-81 & 488 (6th Cir. 2008) (Expert's report was unsworn letter and the district court erred in considering it in deciding summary judgment motion),[4] and disputed. Hammervold Decl. ¶ 74.

### III. This Court Need Not – and Should Not – Determine the *Amount* of Hammervold's Damages at the Summary Judgment Stage.

In his Motion, Beckwith disputes the amount ($250,000) that Hammervold alleges in his *ad damnum.* MSJ at 13-14. While it is unclear what relief Beckwith is seeking with respect to this

---

[4] *See also Pack v. Damon Corp.,* 434 F.3d 810, 815 (6th Cir. 2006) ("[T]he...[expert] Report is unsworn and thus is hearsay, which may not be considered on a motion for summary judgment").

14

issue, Beckwith's attempt to have this Court determine or cap the fee it might later award Hammervold has no merit and is an improper issue for summary judgment.

**a. Beckwith's Challenge to Hammervold's *Ad Damnum* is Bizarre and Meritless.**

Beckwith's focus on, and dispute of, the $250,000 *ad damnum* in the complaint is bizarre because an "*ad damnum* is totally irrelevant." *Zuckerman v. Tatarian*, 418 F.2d 878, 880 (1st Cir. 1969); *see also e.g., Harrison v. City of Chattanooga*, Slip. Op., No. 1:19-CV-37, DKt. 77 at 9-11 (granting motion in limine to exclude *ad damnum* at trial based on Rule 401 and 403); *see also Pridemore-Turner v. Univ. Health Sys.,* 2021 U.S. Dist. LEXIS 235014, *4 (E.D. Tenn. Dec. 8, 2021) (same). This Court need not address Hammervold's *ad damnum* because it has no impact on the amount of damages that Hammervold could or will request, or on what this Court could award. *See Lawrence v. E. I. Dupont De Nemours & Co.*, 2005 U.S. Dist. LEXIS 48490, *5-6 (M.D. Tenn. Nov. 9, 2005).

Contrary to Beckwith's argument, Hammervold has no obligation to produce evidence supporting the specific *amount* of his quantum meruit claim at the summary judgment stage. *See Zitzow v. Auto-Owners Ins. Co.,* 2022 U.S. Dist. LEXIS 92079, *13 (E.D. Tenn. May 21, 2022) (explaining that a plaintiff need not present proof of the *amount* of damages at summary judgment, only of the *existence* of damages, if challenged); *ACF 2006 Corp. v. Conour*, 2015 U.S. Dist. LEXIS 10942, *23 (S.D. Ind. Jan. 30, 2015) ("The determination of the exact amount Mr. Conour and the Conour Firm is entitled to under a theory of quantum meruit is a question of fact that cannot be resolved at summary judgment."); *see also Gupton v. Davis*, 2012 Tenn. App. LEXIS 668, *30 (Tenn. Ct. App. Sept. 25, 2012) (noting that given the highly discretionary nature of a *quantum meruit* fee, we believe it essentially was inevitable that the Trial Court's final figure would be subject to reasonable dispute.").

### b. This Court Should Determine Hammervold's Fee Based on a Reasonable *Percentage* of the Parties' Original Contingency Fee Scale.

At trial, Hammervold will ask this Court to award Hammervold a reasonable percentage of the original contingency fee scale between Beckwith, Manookian, and Hammervold. Although this Court should not determine the amount of Hammervold's fee at this time, Hammervold is addressing the proper framework for that fee to help illustrate the flaws of Beckwith's other summary judgment arguments.

Beckwith complains about Hammervold's *quantum meruit* fee being computed based on a loadstar basis (rate x hours) when the Parties never contemplated an hourly rate for Hammervold's work on the case and Hammervold did not keep track of his time. *See* MSJ at 10 ("Hammervold did not discuss what rate he would charge") and 14 (block quoting Hammervold's response to Interrogatory #6, wherein Hammervold acknowledges he did not keep contemporaneous time records because he was working on a contingency fee). Hammervold also agrees that his fee should not be computed on a loadstar basis.

A *quantum meruit* fee should be based on the *value* the legal services conferred for the client, rather than just the time expended by the attorney. *Gupton*, 2012 Tenn. App. LEXIS 668, *30 ("[Q]uantum meruit is based on benefit conferred, rather than direct compensation for hours spent in service."); *see also Johnson v. Hunter,* 2001 Tenn. App. LEXIS 795, *18-20 (Tenn. Ct. App. Oct. 25, 2001) (explaining that "*quantum meruit* . . .should be based on the value of the benefit conferred" and noting that "[t]he time devoted to performing the legal service is only one factor in an extensive list").

Where, as here, an attorney worked on a contingency fee, but was dismissed and replaced with another lawyer, courts will often determine amount of the predecessor's *quantum meruit* fee by reducing the percentage of the contingency fee amount to reflect that lawyer's contribution to

16

the final settlement or judgment amount. *See e.g., Johnson,* 2001 Tenn. App. LEXIS 795, *18-20

(vacating quantum meruit award based on loadstar method and replacing it with an award based

on a reduced percentage of the contingency fee account for the plaintiff attorney's percentage

contribution to the overall result in the case); *see also O'Rourke v. Cairns,* 683 So. 2d 697, 703

(La. 1996) ("In the situation of counsel dismissed for cause by the client in the contingency fee

context, quantum meruit cannot be limited merely to an hourly rate calculation. . . .A calculation

based on hours alone is a bright-line rule which fails to consider the unique character of the

contingency fee contract, including risks not encountered in hourly or fixed fee agreements, . . . .

Therefore, we find that the lower courts erred in confining the quantum meruit analysis only to the

actual hours spent by discharged counsel in this case."); *ACF 2006 Corp.*, 2015 U.S. Dist. LEXIS

10942, *23 ("The *quantum meruit* amount [in this situation] is the portion of the contingent fee

equal to the total effort expended to achieve the contingency that is attributable to the predecessor's

work.") (explaining that a predecessor lawyer should not be compensated on an hourly basis

because it "could result in over or under payment.").[5]

    *Cobb v. Time, Inc.* demonstrates application of this principle in a very similar case within

this district.  2000 U.S. Dist. LEXIS 21788 (M.D. Tenn. Jul. 12, 2000) (applying Tennessee law).

A famous boxer, Cobb, originally retained two lawyers, Wiggs and McFarlin, to represent him in

a defamation case on a contingency basis. *Id.* at *6-7. They all agreed that Wiggs and McFarlin

would receive 33 1/3 % of the recovery in the case. *Id.* *9. Cobb retained them just before the

statute of limitations and they worked quickly to get his complaint timely filed. *Id.* *7. Wiggs and

McFarlin were then successful in keeping Cobb's core claims from being disposed through a

---

[5] Courts have also noted that applying a loadstar method when a contingency fee agreement is terminated would create
an adverse incentive for the lawyer or client to terminate the contingency fee (even at the last minute) to increase
or decrease the fee structure to which they had agreed. *See e.g., Howard v. Proviso Twp. High Sch. SD 209 Bd. of
Educ.,* 2023 U.S. Dist. LEXIS 186100, *11 (N.D. Ill. Oct. 17, 2023).

motion to dismiss and motion for summary judgment. *Id.* *10-11. McFarlin then withdrew to run for judicial office, so Wiggs had to continue representing Cobb alone. *Id.* *12. After Wiggs performed "confined" discovery and engaged in some settlement negotiations, Cobb replaced Wiggs with other counsel, who represented Cobb on a 40% contingency fee. *Id.* *11-12, *19. The substitute counsel performed robust discovery and "did a fine job of developing, organizing, and presenting the evidence." *Id.* *15. Substitute counsel tried the case before a jury and obtained a plaintiff verdict. *Id.* *16. The court found that Wiggs and McFarlin were entitled to a quantum meruit fee because:

> Wiggs and McFarlin expended numerous hours in their representation of Cobb for approximately three years; . . .they initiated the lawsuit within the closing of the statute of limitations; that they later filed an amended complaint and defended a battery of motions by opposing counsel to dismiss all the various claims contained in the complaint;  and that they withstood a vital motion for summary judgment, which preserved the essence of Cobb's several charges. *Id.* at *17-18.

Since Wiggs and McFarlin were working on a contingency fee, and did not keep time records, the *Cobb* court found it was "impossible to perform a loadstar analysis as to their work." *Id.,* *17, n. 4. But the court noted this was "not a fatal deficiency" because "courts do not require such records in contingency fee cases where they are determining a quantum meruit fee award." *Id.* The *Cobb* court ultimately concluded that Wiggs and McFarlin would be entitled to 10% of the 40% contingency fee that Cobb agreed to pay the substitute counsel. *Id.* *20.

In this case, the Court should award Hammervold a *quantum meruit* fee based on a reasonable percentage of the original contingency fee structure that both Beckwith and Hammervold originally understood would be used to determine Hammervold's compensation for his work in *Lattimore*. *See also e.g.,* *E. L. Klewicki Co. v. American Screw Products*, 690 F.2d 85 (6th Cir. 1982) (affirming trial court's valuation of plaintiff's quantum meruit claim based on 1% commission, where original contract provided for 5% commission).

18

Since the *Lattimore* case has not yet concluded, this approach would also be the most equitable resolution because it would avoid the potential unfairness of Beckwith having to pay Hammervold a fee – originally based on a contingency– before the fact or scope of Beckwith's recovery in the case becomes known. *See Howard,* 2023 U.S. Dist. LEXIS 186100, *10 (noting "in several jurisdictions, '[t]he amount recovered on a quantum meruit basis should be limited to no more than the amount that would be owed pursuant to the original contingent fee contract.'") (quoting 1 Robert L. Rossi, Attorneys' Fees § 3:12 (3d ed., updated June 2023)).

### c. <u>This Court Should Not Limit Hammervold's Fee Based on the Baltz Report</u>

Beckwith argues that this Court should cap Hammervold's fee at $4,500 based on the expert report of Mr. Baltz. MSJ at 13-14. This has no merit for the same reasons outlined in *supra* § III(a) and several others. Mr. Baltz's unsworn report is also inadmissible, *Sigler,* 532 F.3d at 480-81 & 488; *Pack,* 434 F.3d at 815, and has no merit the reasons separately briefed in Plaintiff's Motion to Strike or Limit Mr. Baltz's Testimony. *See* Dkt. 57.

Mr. Baltz's opinions are also unhelpful because: (1) he applies an inapplicable loadstar method for determining the value of Hammervold's services before January 22, 2016, *see supra* § III(b); and (2) he offers an improper opinion that Hammervold should not be entitled to any fee for his work from January 22, 2016 to July 25, 2019. *See* Dkt. 57 at 6-10.

Beckwith argues that this Court must accept Mr. Baltz's opinion by default because Plaintiff did not disclose a competing expert. *See* MSJ at 14. However, the determination of a "reasonable" *quantum meruit* fee is a question for the Court – and not a retained opinion witness. *See* Dkt. 57 at 6-10; *see also e.g., Skepnek v. Roper & Twardowsky, LLC,* 2017 U.S. Dist. LEXIS 145570, *11 (D. Kan. Sept. 8, 2017) (rejecting defendant's argument that expert testimony is required to prove the amount of a reasonable quantum meruit fee). This Court will not need expert

19

testimony to evaluate the value of Hammervold's legal services based on the other proof that will be presented. *See e.g., Daniels v. Mendbnb, LLC,* 2024 U.S. Dist. LEXIS 26551, *4 (M.D. Tenn. Feb. 15, 2024) (J. Trauger) (awarding "reasonable" attorney fees in FSLA case based on "Court's familiarity with the efforts expended by counsel in this case, the reasonableness of the requested hourly rate, and the successful outcome."); *see also Evans v. Caregivers, Inc.*, 2018 U.S. Dist. LEXIS 67049, *3-4 (Apr. 20, 2018) (J. Trauger) (noting the court has "broad discretion" in determining a "reasonable" attorney fee and should consider "its own expertise and judgment" in doing so).

**IV.**     **Beckwith's Forfeiture Affirmative Defense – Based on RPC 1.5 – Has No Merit.**

Beckwith also argues that Hammervold should forfeit his fee because he violated Rule 1.5 of the Rules of Professional Conduct. MSJ at 15. Specifically, Beckwith claims that the contingency fee agreement violated Tenn. R. Prof. Resp. § 1.5 and that Hammervold's *ad damnum* seeks an "excessive fee." MSJ at 15-17.

**A. The Contingency Fee Agreement Did Not Violate RPC 1.5.**

The contingency fee agreement in this case did not violate RPC 1.5 but, even accepting Beckwith's arguments otherwise, forfeiture would still not be warranted.

With respect to Beckwith's claim that the contingency fee agreement (Dkt. 1-2) violated RPC 1.5, this Court previously "discern[ed] no attorney misconduct in the facts as alleged by Hammervold." Dkt. 28 at 13; *see Capital Equity Grp. v. Ripken Sports Inc.,* 744 Fed. Appx. 260, 262 (6th Cir. July 30, 2018) ("When, as in this case, a party attaches 'a copy of a written instrument' to a complaint, the attachment becomes 'a part of the pleading for all purposes,' Fed. R. Civ. P. 10(c), and may be considered at the motion-to-dismiss stage.").

This Court was correct that Dkt. 1-2 did not violate Tenn. R. Prof. Resp. § 1.5(e). That rule permits lawyers who are not in the same firm to divide a contingency fee where (1) the division of

20

the fee is in proportion to the services performed by each lawyer; (2) the client agrees to the arrangement; and (3) the total fee is reasonable. Here, Beckwith expressly agreed to Hammervold assisting in the representation and splitting the contingency fee with Manookian, Manookian Decl. ¶ 2 and Dkt. 1-2, and does not challenge that the overall structure of the contingency fee agreement was reasonable. *See* MSJ at 15-19. Beckwith only complains that the exact fee split between Hammervold and Manookian was not identified in the contingency agreement at the outset of the representation. MSJ at 15. But Beckwith ignores that Manookian and Hammervold's final fee split was to be based on their actual division of labor in the case. Hammervold Decl., ¶ 6. This is not only appropriate, but is *required* by Tenn. R. Prof. Resp. § 1.5(e)(1). *Id.* No final division of contingency fee between Hammervold and Manookian was ever presented to Beckwith for his approval because Beckwith terminated the contingency fee agreement before the conclusion of the case.

This Court also correctly found that "even assuming that Hammervold somehow violated the Rules by seeking recovery of fees in this action, the Preamble to the Rules of Professional Responsibility expressly provides that '[t]he fact that a Rule is a just basis for a lawyer's self assessment, of for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule.'" Dkt. 28 at 12-13 (quoting Tenn. S. Ct. R. 9, Preamble & Scope ¶ 21.[6]

Under Tennessee law, "forfeitures are not favored" and will only extinguish an attorney's right to recover a quantum meruit fee where the misconduct is truly egregious. *Madison Tire Co.*,

---

[6] The Tennessee Rules of Professional Conduct are "designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies," and not "to be a basis for civil liability." Tenn. R. Prof. Cond. Preamble and Scope at [21]. The "violation of a Rule does not necessarily warrant any other nondisciplinary remedy" and "the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons." *Id.* The Rules do "not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule." *Id.*

1986 Tenn. App. LEXIS 3427, *4; *see also id.* at *7 ("it is contrary to the law to hold that any misconduct of an attorney, whether intentional or not, whether damaging to the client or not, automatically brings about forfeiture of his fees."); *see* Dkt. 28 at 13 ("Tennessee courts have never held that '*any* misconduct of any attorney, whether intentional or not, whether damaging to the client or not, automatically brings about forfeiture of his fees.") (quoting *Madison Tire*, 1986 WL 12493, at *2).

Even if the contingency fee agreement violated Rule 1.5, the violation would be purely technical, with no impact on Beckwith. When the contingency fee agreement was negotiated in 2015, Beckwith was: (1) an extremely wealthy and sophisticated party; (2) represented by separate in-house counsel; and (3) experienced with litigation. Hammervold Decl., ¶ 9. Beckwith does not complain that the contingency fee agreement was substantively unfair *to him* in any way. The fee split percentage among the attorneys would realistically only impact Manookian or Hammervold because the overall fee paid by Beckwith pursuant to the contingency fee agreement would remain the same regardless. *See* Dkt. 1-2. Beckwith suffered no harm whatsoever from anything Hammervold did as his attorney. To the contrary, Beckwith significantly benefitted from Hammervold's successful efforts on his behalf. Hammervold Decl. ¶ 71.

Courts have found that forfeiture is inappropriate in cases involving far more problematic issues with contingency fee agreements. In *Cummings v. Patterson*, the lawyers included a right to "veto" any settlement the client wanted to enter and attempted to invalidate their client's settlement based on that provision. 59 Tenn. App. 536, 540 (Tenn. Ct. App. 1968). Although this provision was "completely void as against public policy," the court still found that but still found that it would be "inequitable and unjust to permit the client to profit by an innocent inclusion of this obnoxious provision in the contract" and affirmed the lower court's award of a fee based on

quantum meruit. *Id.* at 541; *see also Seiden Law Grp., P.C.,* 2021 IL App (1st) 200877, *P24 ("Because we have found that the missing percentage recovery [in the contingency agreement] was fatal to the contingency-fee agreement's enforceability [pursuant to Rule 1.5] and, thus, there was not a valid and enforceable agreement between the parties, the court erred by dismissing Seiden Law's quantum meruit count. . .").

### B. Hammervold's *Ad Damnum* Did Not Violate RPC 1.5.

Beckwith also argues that Hammervold should forfeit any right to recover based on *quantum meruit* because the amount of damages in his *ad dammum* is "certainly not a reasonable fee," MSJ at 13. Yet again, Beckwith is wrong on multiple levels.

First, Hammervold's *ad dammum* is "irrelevant" and has no bearing on what he can request or be awarded in this case. *See supra* § III(a).

Second, Hammervold's $250,000 *ad dammum* is not only reasonable, but was likely too low compared to the value of Hammervold's efforts in timely filing and preserving Beckwith's claim. Hammervold Decl. ¶ 74. As outlined in *supra* § III(b), Hammervold's fee should be awarded as a percentage of the original contingency fee structure, based on what Beckwith ultimately recovers in *Lattimore*, rather than based on the number of hours Hammervold spent working on the case. That fee could be substantial, as the Parties agree that Beckwith's claim is meritorious, *see* Answer, ¶ 22, and Beckwith is seeking over ▮▮▮▮▮ in damages in *Lattimore*. Hammervold Decl. ¶ 67-68. Ex. B thereto; *see also* Dkt. 1-2 (outlining contingency fee formula).

Third, Hammervold's *ad dammum* in this case is clearly distinguishable from *White v. McBride,* 937 S.W.2d 796, 799 (Tenn. 1996), where a forfeiture was found based on an unreasonable contingency fee agreement.[7] In contrast to *White*, Beckwith does not claim that the

---

[7] Beckwith previously relied on *White* when he first presented this same argument in his motion to dismiss. MTD at 13. Now, he does not cite any cases where forfeiture was found. *See* MSJ at 16-17.

contingency fee agreement he entered with Cummings Manookian was an unreasonable fee. *See Alexander v. Inman,* 974 S.W.2d 689, 693 n. 6 (Tenn. 1998) (limited its previous holding in *White* to circumstances where an attorney enters into a contingency fee agreement where the overall fee is unreasonable). While a lawyer owes fiduciary duty to a client when entering a contingency fee agreement, 37 S.W.2d at 803, Hammervold did not owe Beckwith a fiduciary duty when coming up with a number for the *ad damnum* in his complaint against Beckwith. *C.f. Williams v. Nichols,* 266 F.2d 389, 394 (4th Cir. 1959) (Paul, J., concurring) ("It is a matter of common knowledge that ordinarily in a tort case, the damages laid in the complaint are in an amount arbitrarily chosen, greatly exaggerated, and having little, if any, value as a measurement of the damage actually suffered.").

## CONCLUSION

For the foregoing reasons, Beckwith's Motion for Summary Judgment should be denied.

**RESPECTFULLY SUBMITTED:**

**s/Mark Hammervold**
Mark Hammervold, TN #31147
155 S. Lawndale Ave.
Elmhurst, IL 60126
mark@hammervoldlaw.com

*Pro Se Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on July 5, 2024, a true and correct copy of the foregoing filing was served upon all counsel of record in this proceeding through the ECF and through the following counsel by email:

>Jamie Cotter (cotter@spencerfane.com) (*pro hac vice*)
>Bethany Vanhooser (bvanhooser@spencerfane.com)
>Spencer Fane LLP
>*Attorneys for Defendant*

>*/s/ Mark Hammervold*