# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| MARK HAMMERVOLD; | § | |
| --- | --- | --- |
| Plaintiff | § § § | |
| v. | § § § | No. 3:22-CV-01053 |
| LARRY BECKWITH; | § § § | |
| Defendant | § § § | |

## SUPPLEMENTAL DECLARATION OF MARK HAMMERVOLD

I, Mark Hammervold, do hereby certify pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the following statements are true and correct:

1. I am an adult citizen over the age of 18 years old. I am competent to testify and have personal knowledge of the facts herein.

2. The key premise of Mr. Baltz's report – that most of my work had no value to Beckwith – is totally incorrect. When a lawsuit is erroneously dismissed, representing a plaintiff in a successful appeal to obtain the reversal of that dismissal provides tremendous value to the plaintiff – particularly for a plaintiff like Beckwith, who has a meritorious and highly valuable claim.

3. After January 22, 2016, I performed significant work for Beckwith in the Lattimore case. Contrary to Kevin Baltz's assumption, this work was not limited to motion practice and the appeal regarding the timeliness of the complaint. Lattimore also filed dispositive motions on other flawed bases that we were successful in defeating at the trial court level, such as inadequate service. I was also successful, in part, in moving the court to revise its initial order of summary judgment

1

and dismissal in the case. In addition to dispositive motions, I also spent significant time preparing and strategizing for Mr. Beckwith's claim, including reviewing many financial records provided by Mr. Beckwith. I also prepared a memorandum on a damages-related issue. These are just several examples. It is unclear why Mr. Baltz did not acknowledge or consider this work in his report, as I produced my full casefile to Beckwith in this case.

4. After I took over as lead counsel for Beckwith in the Lattimore case, I had the same level of responsibility as my opposing counsel John Day. Mr. Day's billable rate was $600 an hour.[1] While Mr. Day has been practicing longer than me, I eventually prevailed over Mr. Day when we went head-to-head in the Beckwith appeal. I do not believe that Mr. Day's work as lead counsel for *Lattimore* deserved a higher rate than my work as lead counsel for Beckwith in the same case.

5. The initial work I performed on Beckwith's case against Lattimore – leading up to January 22, 2016 – was performed on an accelerated timeframe, at the request of Larry Beckwith.

**Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.**

**Executed this 15th day of August, 2024.**

<u>s/Mark Hammervold</u>
**Mark Hammervold**

---

[1] *See* **Exhibit A** hereto.

# Exhibit A

1      MR. CRESON: No objection has been made to that
 2 proof. Every objection that's made is liability. If the
 3 argument is -- if there is liability, he can ask about did
 4 that liable act cause something. I don't want questions that
 5 ask: "Was that a breach of the protective order? Did you
 6 mismark and is that wrongful?" That's the distinction.
 7      THE COURT: I get that. Do you understand that?
 8      MR. HAMMERVOLD: Yes, Your Honor.
 9      THE COURT: Are we missing anything? I think
10 that's pretty easy to understand. And I'm not trying to be
11 condescending, but I just don't want to be missing something.
12      MR. HAMMERVOLD: Yes, Your Honor.
13      THE COURT: It seems to be really straightforward
14 and easy to me.
15      MR. HAMMERVOLD: Yes, Your Honor. And I think that
16 I --
17      THE COURT: And I don't think we need to complicate
18 this, do we?
19      MR. HAMMERVOLD: Well, there may be some
20 complicated issues that come up at the margin, and I guess we
21 can address those --
22      THE COURT: All right.
23      MR. HAMMERVOLD: -- when they come.
24      THE COURT: All right. Okay. I guess we can.
25      MR. HAMMERVOLD: Okay.
                                                           85

 1      I'd next like to call John Day.
 2      THE COURT: All right. Mr. Day, come on up,
 3 please, sir.
 4      I'm not going to even think about asking you
 5 gentlemen if you will waive these attorneys' oath. So I'm
 6 not going to mention it. I just thought I would say that
 7 because ordinarily I would. I would ask that you gentleman
 8 waive the oath for attorneys who are testifying.
 9      But I'm going to put you under oath, Mr. Day. Sir,
10 if you'll raise your right hand.
11              JOHN DAY, ESQUIRE
12 having been first duly sworn, testified as follows:
13              CROSS-EXAMINATION
14 BY MR. HAMMERVOLD:
15   Q.   Mr. Day, you have been retained as an opinion
16 witness. Is that correct?
17   A.   Yes, sir.
18   Q.   And how much are you being -- how are you being
19 compensated for your testimony today?
20   A.   I did not know until five minutes ago, but I'm
21 being paid by the hour.
22   Q.   And how much are you being paid by the hour for
23 your testimony today?
24   A.   $600.
25   Q.   $600.
                                                           86

 1      THE COURT REPORTER: Would you mind moving the
 2 microphone.
 3      THE WITNESS: Certainly. I'm sorry.
 4      THE COURT REPORTER: Thank you.
 5   Q.   (By Mr. Hammervold) And, Mr. Day, what is your
 6 billable rate generally for performing work as an attorney?
 7   A.   For this year, it's been $600 per hour.
 8   Q.   Okay. And how often are you able to charge that
 9 billable rate?
10   A.   As often as I can, but rarely because most of my
11 work is on a contingent fee.
12   Q.   And when you do work on a contingency basis, your
13 hourly rate is essentially just an approximation?
14      THE COURT: Who is he representing today?
15      MR. CHARLES MALONE: Who is Mr. Day representing?
16      THE COURT: Right.
17      MR. CHARLES MALONE: We submitted an affidavit from
18 John Day --
19      THE COURT: Okay, I'm sorry.
20      MR. CHARLES MALONE: -- that was on expert
21 affidavit testifying --
22      THE COURT: I did not see that. I just wanted to
23 make sure.
24      MR. CHARLES MALONE: It was testifying that our --
25      THE COURT: All right.
                                                           87

 1      MR. CHARLES MALONE: -- fees and expenses --
 2      THE COURT: Got it. Okay.
 3      MR. CHARLES MALONE: -- reasonable and necessary.
 4      THE COURT: Very good. Thank you.
 5      Go ahead.
 6   Q.   (By Mr. Hammervold) And when you set your rate for
 7 $600, that's based on just what you're able to charge?
 8   A.   No, not really. I base the $600 rate on a couple
 9 different things. Number one, about five years ago, I was in
10 a matter involving a fee issue and Steve Riley was charging
11 $600 an hour five years ago. And I thought that five years
12 later I would be worth what Steve Riley was. That's number
13 one.
14      Number two: I got involved in a matter with some
15 out-of-state lawyers, one of whom was charging $1,600 an
16 hour, and their first-year associates were 500. And my rate
17 at that time - this was several years ago - was 475. And I
18 asked if I could increase my rate to be at least that of a
19 first-year associate.
20      So that and a combination of understanding
21 generally what the rates are for people with 36 years
22 experience, I thought 600 was about right.
23   Q.   Is C.J. Gideon also someone that you would put in
24 that experience tier?
25   A.   Yes.
                                                           88